# ENOCHS, DISTRICT DIRECTOR OF INTERNAL REVENUE, v. WILLIAMS PACKING & NAVIGATION CO., INC.

No. 493.   Argued April 18, 1962.—Decided May 28, 1962.

*Assistant Attorney General Oberdorfer* argued the cause for petitioner.  With him on the briefs were *Solicitor General Cox, Acting Assistant Attorney General Jones, Meyer Rothwacks* and *George F. Lynch.*

1

*George E. Morse* argued the cause for respondent. With him on the briefs was *W. E. Morse.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

Fearing that the District Director of Internal Revenue for Mississippi would attempt to collect allegedly past due social security and unemployment taxes for the years 1953, 1954 and 1955, respondent, in late 1957, brought suit in the District Court, maintaining that it was not liable for the exactions and seeking an injunction prohibiting their collection. The District Director, petitioner herein, made no objection to the issuance of a preliminary restraining order but resisted a permanent injunction, asserting that the provisions of § 7421 (a) of the Internal Revenue Code of 1954 barred any such injunctive proceeding. That section provides:

"Except as provided in sections 6212 (a) and (c), and 6213 (a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

The exception for Tax Court proceedings created by §§ 6212 (a) and (c) and 6213 (a) was not applicable because that body is without jurisdiction over taxes of the sort here in issue. Nevertheless, on July 14, 1959, the court, relying upon *Miller* v. *Standard Nut Margarine Co.,* 284 U. S. 498, permanently enjoined collection of the taxes on the ground that they were not, in fact, payable and because collection would destroy respondent's business. 176 F. Supp. 168. On June 14, 1961, the Court of Appeals for the Fifth Circuit affirmed, one judge dissenting. 291 F. 2d 402. We granted certiorari to determine whether the case came within the scope of this Court's holding in *Nut Margarine* which indicated that § 7421 (a) was not, in the "special and extraordinary facts and cir-

cumstances" of that case,[1] intended to apply.[2]    368 U. S. 937.

Respondent corporation (hereinafter referred to as Williams) is engaged in the business of providing trawlers to fishermen who take shrimp, oysters and fish off the Louisiana and Mississippi coasts.   It is the Government's position that these fishermen are the corporation's employees within the meaning of §§ 1426 (d)(2) and 1607 (i) of the Internal Revenue Code of 1939, 26 U. S. C. (1952 ed.), and §§ 3121 (d)(2) and 3306 (i) of the Internal Revenue Code of 1954.   These sections specifically adopt the common-law test for ascertaining the existence of the employer-employee relationship.   As stated in *United States* v. *Silk,* 331 U. S. 704, 716, "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required . . . are important for decision [under these statutes]."   If, under the involved circumstances of this case, the fishermen were employees, respondent Williams is admittedly liable for social security and unemployment taxes for the years in question.[3]

The following facts, material to the question of the existence of the employment relationship, were established.   Williams provided its boats to captains which it selected; they employed their own crews and could fire them at will, but the relationship between respondent cor-

---

[1] 284 U. S., at 511.

[2] See also *Hill* v. *Wallace,* 259 U. S. 44, 62; *Allen* v. *Regents,* 304 U. S. 439, 449.

[3] See § 1410, 1939 Code, and § 3111, 1954 Code (social security taxes); § 1600, 1939 Code, and § 3301, 1954 Code (unemployment taxes).

Presumably the exceptions for fishing operations created by §§ 1426 (b)(15) and 1607 (c)(17) of the 1939 Code and by § 3306 (c)(17) of the 1954 Code do not apply because the vessels here involved were of more than 10 net tons.

4

poration and the fishermen was not ordinarily of short duration. The catch was generally sold to Williams which in turn resold it to the DeJean Packing Co., a partnership closely allied to Williams both by reason of integrated operation and substantially identical ownership. The proceeds, after the deduction of expenses, were divided among the captain, the crew and the boat. Williams received an additional share if it supplied the nets and rigging. It extended credit to the captains and made it possible for them to obtain credit elsewhere, and if a trip was unsuccessful and if the captain or crew members no longer continued to operate a boat, Williams absorbed the loss.

With respect to the existence of a recognized right of control by the employer, as might be expected, the testimony was in conflict. Petitioner introduced evidence to show that Williams could effectively refuse ice to boats and thus determine whether they would go out, that the boats' times of return were sometimes directed by the respondent corporation, that it could dictate the nature of the catch, and that permission was needed to sell the catch to someone other than respondent. And petitioner pointed out that both respondent and its fishermen had for other purposes represented that an employer-employee relationship existed.[4] On the other hand, the District Court here found, and the respondent now asserts, that the corporation was wholly without any right of control.

[4] For instance, during World War II, respondent represented that the fishermen were employees for the purpose of securing occupational deferments for them. And in the course of a prior antitrust litigation, instituted against a union to which respondent's fishermen belonged, the union defended against the charge of price fixing on the ground that its members were employees. The Government, curiously, successfully maintained that an employment relationship did not exist. See *Gulf Coast Shrimpers & Oystermans Assn.* v. *United States*, 236 F. 2d 658 (C. A. 5th Cir. 1956).

Attempting to establish a basis for equitable jurisdiction, the corporation maintains that it will be thrown into bankruptcy if required to pay the entire assessment of $41,568.57. It is undisputed that Williams itself is without available funds in this amount, but the Government suggests that respondent has denuded itself of assets in anticipation of its tax liability, that DeJean's assets should be considered as belonging to respondent, and that, in any event, the respondent corporation may pay the assessment for a single quarter and then sue for a refund.

The object of § 7421 (a) is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes. In *Miller* v. *Standard Nut Margarine Co., supra,* this Court was confronted with the question whether a manufacturer of "Southern Nut Product" could enjoin the collection of federal oleomargarine taxes on its goods. Prior to the assessment in issue three lower federal court cases had held that similar products were nontaxable and, by letter, the collector had informed the manufacturer that "Southern Nut Product" was not subject to the tax. This Court found that "[a] valid oleomargarine tax could by no legal possibility have been assessed against . . . [the manufacturer], and therefore the reasons underlying . . . [§ 7421 (a)] apply, if at all, with little force." [5]

---

[5] *Id.,* at 510.

The product in issue was made only with vegetable oils. The pertinent taxing statute defined "oleomargarine" as "[a]ll substances heretofore known as oleomargarine, oleo, oleomargarine-oil, butterine, lardine, suine, and neutral; all mixtures and compounds of oleomargarine, oleo, oleomargarine-oil, butterine, lardine, suine, and neutral; all lard extracts and tallow extracts; and all mixtures and compounds of tallow, beef-fat, suet, lard, lard-oil, vegetable-oil annotto [a coloring material], and other coloring matter, intestinal fat, and offal fat made in imitation or semblance of butter, or when so made, calculated or intended to be sold as butter or for butter." 24 Stat. 209. The assessment was based on the argument that the statutory

Noting that collection of the tax "would destroy its business, ruin it financially and inflict loss for which it would have no remedy at law," the Court held that an injunction could properly issue. *Id.*, at 510–511. The courts below seem to have found that *Nut Margarine* decides that § 7421 (a) does not bar suit for an injunction against the collection of taxes not due if the legal remedy is inadequate. We cannot agree.

The enactment of the comparable Tax Injunction Act of 1937, 50 Stat. 738, now, as amended, 28 U. S. C. § 1341, forbidding the federal courts to entertain suits to enjoin collection of state taxes "where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such State," throws light on the proper construction to be given § 7421 (a). It indicates that if Congress had desired to make the availability of the injunctive remedy against the collection of federal taxes not lawfully due depend upon the adequacy of the legal remedy, it would have said so explicitly. Its failure to do so shows that such a suit may not be entertained merely because collection would cause an irreparable injury, such as the ruination of the taxpayer's enterprise. This is not to say, of course, that inadequacy of the legal remedy need not be established if § 7421 (a) is inapplicable; indeed, the contrary rule is well established. See, *e. g., Matthews* v. *Rodgers,* 284 U. S. 521; *Miller* v. *Standard Nut Margarine Co., supra; Dows* v. *Chicago,* 11 Wall. 108. However, since we conclude that § 7421 (a) bars any suit for an injunction in this case, we need not determine whether

reference to "vegetable-oil annotto" was meant to bring products made with vegetable oil within the definition. The Court held that the Act was obviously designed to include only vegetable-oil coloring used in conjunction with animal-fat products; in fact, after the tax year involved, the statute had been amended to bring vegetable-oil products within the definition. See 46 Stat. 1022.

the taxpayer would suffer irreparable injury if collection were effected.

The manifest purpose of § 7421 (a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund.   In this manner the United States is assured of prompt collection of its lawful revenue.[6]   Nevertheless, if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and, under the *Nut Margarine* case, the attempted collection may be enjoined if equity jurisdiction otherwise exists.   In such a situation the exaction is merely in "the guise of a tax." *Id.,* at 509.

We believe that the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit.   Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained.   Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed.   To require more than good faith on the part of the Government would unduly interfere with a collateral

---

[6] Compare S. Rep. No. 1035, 75th Cong., 1st Sess. 2, concerning 28 U. S. C. § 1341:

"The existing practice of the Federal courts in entertaining tax-injunction suits against State officers makes it possible for foreign corporations doing business in such States to withhold from them and their governmental subdivisions, taxes in such vast amounts and for such long periods of time as to seriously disrupt State and county finances.   The pressing needs of these States for this tax money is so great that in many instances they have been compelled to compromise these suits, as a result of which substantial portions of the tax have been lost to the States without a judicial examination into the real merits of the controversy."

8

objective of the Act—protection of the collector from litigation pending a suit for refund. And to permit even the maintenance of a suit in which an injunction could issue only after the taxpayer's nonliability had been conclusively established might "in every practical sense operate to suspend collection of the . . . taxes until the litigation is ended." *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293, 299. Thus, in general, the Act prohibits suits for injunctions barring the collection of federal taxes when the collecting officers have made the assessment and claim that it is valid. *Snyder* v. *Marks,* 109 U. S. 189, 194.

The record before us clearly reveals that the Government's claim of liability was not without foundation. Therefore, we reverse the judgment of the Court of Appeals and remand the case to the District Court with directions to dismiss the complaint.

*Reversed.*

Mr. Justice Frankfurter took no part in the consideration or decision of this case.