**STATE OF MINNESOTA, By Warren SPANNAUS, Its Attorney General, Appellant,**

v.

**UNITED STATES of America et al., Appellees.**

No. 74–1973.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1975.

Decided Nov. 4, 1975.

the United States and certain of its officials from imposing the Federal Communications Tax, 26 U.S.C. § 4251 *et seq.,* on the Minnesota sales tax portion of telephone service charges made by the Northwestern Bell Telephone Company and Continental Telephone Company. The district court, The Honorable Edward Devitt presiding, held that the Federal Anti-Injunction Act, 26 U.S.C. § 7421(a), precluded injunctive relief. The Act reads in part:

> [N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

James Gerlach, Sp. Asst. Atty. Gen., St. Paul, Minn., for appellant.

Ann Belanger Durney, Atty., Dept. of Justice, Tax Div., Washington, D. C., for appellees.

Albert R. Hausauer, Robert W. Wirtz, Kenneth M. Jakes, Sp. Asst. Attys. Gen. for the State of North Dakota, Bismarck, N. D., filed typewritten brief for amicus curiae, Tax Commissioner of the State of North Dakota.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

The State of Minnesota appeals from the denial of an injunction restraining the district court, relying on *Alexander v. "Americans United" Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); *Bob Jones University v. Simon,* 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974), and *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962), acknowledged that § 7421(a) bars an injunction except when the prerequisites to injunctive relief have been met, that is, the plaintiff has shown lack of an adequate remedy at law and irreparable harm[1] if equitable relief is not granted, and in addition, plaintiff has demonstrated *certainty* of success on the merits. The district court ruled that although the prerequisites for equitable relief "may be satisfied here, it is clear that

---

1. It serves little purpose here to discuss irreparable harm, since as stated by the Supreme Court in *Williams Packing:*

   [A] suit [to enjoin assessment and collection] may not be entertained merely because collection would cause an irreparable injury, *such as the ruination of the taxpayers enterprise.*

   *Williams Packing, supra,* at 6, 82 S.Ct. at 1129 (emphasis added).

   And in *Bob Jones University:*

   Yet petitioner's argument that we should find *Williams Packing* inapplicable turns, in the last analysis, on its claim that to do otherwise would subject it to great harm.

   The Court rejected that consideration in *Williams Packing* itself, and we reject it as a reason for finding that case not controlling. Under the language of the Act, the degree of harm is not a factor, and as a matter of judicial construction, it does not provide a meaningful stopping point between *Standard Nut* [*Miller v. Standard Nut Margarine,* 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422] and *Williams Packing.* Acceptance of petitioner's irreparable injury argument would simply revive the evisceration of the Act inherent in *Standard Nut.*

   416 U.S. at 745–46, 94 S.Ct. at 2050.

the second part of the test has not been met."[2]

■ We do not decide whether the state has shown the prerequisites for equitable relief.[3] We hold only that the district court correctly found that it lacked jurisdiction under § 7421(a) to issue an injunction since the United States has asserted in good faith its right to tax the proceeds and it cannot be said that "under the most liberal view of the law and facts" the United States could not establish its claim.

The Supreme Court set out the applicable standards in the following discussion in *Williams Packing:*

> The manifest purpose of § 7421(a) is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund. In this manner the United States is assured of prompt collection of its lawful revenue. Nevertheless, if it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and, under the *Nut Margarine* case, the attempted collection may be enjoined if equity jurisdiction otherwise exists. In such a situation the exaction is merely in "the guise of a tax." . . . .
> We believe that the question of whether the Government has a chance of ultimately prevailing is to be determined on the basis of the information available to it at the time of suit.

*Only if it is then apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim, may the suit for an injunction be maintained.* Otherwise, the District Court is without jurisdiction, and the complaint must be dismissed. *To require more than good faith on the part of the Government would unduly interfere with a collateral objective of the Act—protection of the collector from litigation pending a suit for refund.* And to permit even the maintenance of a suit in which an injunction could issue only after the taxpayer's nonliability had been conclusively established might "in every practical sense operate to suspend collection of the . . . taxes until the litigation is ended."

370 U.S. at 7–8, 82 S.Ct. at 1129 (emphasis added).

■ The facts of the case are not in dispute. Thus the issue at this stage is a very limited one: whether, under the most liberal view of the law, the Federal Communications Tax could be held applicable to the Minnesota Retail Sales Tax portion of a telephone subscriber's bill. To determine the good faith of the government's position, we need only consider whether the government has adopted an arguable construction of the applicable statutes. We need not, and we do not, adopt any particular construction of the statutes on the merits or even suggest what the ultimate result should be.[4] *See Bob Jones University v. Simon,* 416 U.S. 725, 745, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974); *Cattle Feeders Tax Comm. v.*

---

**2.** On appeal the United States also challenges plaintiff's standing to sue and asserts sovereign immunity.

**3.** The State of Minnesota asserts that it lacks adequate remedy at law in that it does not seek to enjoin a tax on itself but a tax on telephone customers. The state alleges its damage to be a substantial loss of tax revenue since the federal excise tax, asserted to be more than $55,000 per month more under the new method of computation, may be deducted on Minnesota tax returns by Minnesota residents. Nonetheless, as the Supreme Court stated in *"Americans United"*:

Section 7421(a) does not bar merely a taxpayer's attempt to enjoin the collection of its own taxes. . . . [A] suit to enjoin the assessment or collection of *anyone's* taxes triggers the literal terms of § 7421(a).

416 U.S. at 760, 94 S.Ct. at 2058 (emphasis added).

**4.** Nothing within this opinion in any way precludes individual telephone subscribers from seeking the refund in district court or filing a suit in the Tax Court.

**234**

*Shultz,* 504 F.2d 462, 465 (10th Cir. 1974); *Trent v. United States,* 442 F.2d 405, 406 (6th Cir. 1971).

The Federal Communications Tax imposes a tax on amounts paid for local and toll telephone service and teletypewriter exchange service. The tax is to be paid by the person paying for the services. 26 U.S.C. § 4251(a)(1). The method of computing this federal excise tax is set out in § 4254(a)(1):

[T]he amount on which the tax with respect to such services shall be based shall be the sum of all charges for such services included in the bill

. . . .

Under 26 U.S.C. § 4291 the telephone companies providing the service are charged with the responsibility of collecting the Federal Communications Tax from their subscribers on behalf of the federal government.

The State of Minnesota imposes a tax on "the gross receipts from sales at retail." Minn.Stat.Ann. § 297A.02 (1972). The sale of telephone service is considered a "sale at retail" for the purposes of the Minnesota Sales Tax. A sale includes "the furnishing for a consideration of . . . local exchange telephone service and intrastate toll service . . . ." except coin operated phones. Minn.Stat.Ann. § 297A.01 subd. 3(f) (1972). The telephone companies providing such services are responsible for collecting the state sales tax, and the statute prohibits the telephone company from assuming or absorbing the tax themselves. Under Minnesota law the tax must be stated and charged separately on the customer's bill. Minn.Stat. Ann. § 297A.03 subds. 1 and 2 (1972).

Prior to September, 1973 the Federal Communication Tax was computed on a base amount of services charged to customers which did not include the Minnesota Sales Tax. In September, 1973 the IRS instructed the telephone companies to begin computing the Federal Communications Tax based on all charges for the services, including the Minnesota Sales Tax.

In the margin we set forth the government's argument that the tax in question falls on the vendor telephone company.[5] Although the government's

**5.** The United States sets out the following argument in its brief:

As a starting point, it should be noted that the Minnesota statutes do not expressly declare either the retailer or the consumer to be the person upon whom the tax is imposed. Rather, as in the case of the Iowa sales tax provisions considered in Rev.Rul. 73–184, *supra,* it is imposed upon the "gross receipts from sales at retail." There are, however, a number of indications that the Minnesota sales tax is not imposed directly on the consumer, i. e., a true "vendee" tax, as plaintiff claims.

Clearly, the Minnesota statutes provide that the retailer and not the consumer is the one directly liable for the payment of the sales tax. Minn.Stat.Ann., § 297A.27 (1972), requires every retailer to file a monthly tax return with the Commissioner, which shall contain a confession of judgment for the amount of the tax shown due thereon to the extent not timely paid. Minn.Stat.Ann., §§ 297A.32 and 297A.33 (1972), impose penalties on the retailers, as the persons required to file the returns, for failure to file such returns or failure to pay the tax. Significantly, if the full tax is not timely paid, the Commissioner's remedy is a suit against the person required to file the return, i. e., the retailer. Similarly, under Minn.Stat. Ann., § 297A.28, the Commissioner may require the retailer to deposit security, which may be sold, if necessary, to recover any tax not paid.

Thus, the telephone subscribers have no liability to the State of Minnesota should the telephone company for any reason fail to pay its taxes. Conversely, if a subscriber refuses or fails to pay to the telephone company the amount on his bill attributed to the sales tax, this does not relieve the company from paying the full tax on its gross receipts to the state. Failure to pay the four-percent tax upon its gross receipts from sales would subject the company to penalties (Minn.Stat. Ann., § 297A.39 (1972)), and the state could sue the telephone company, and seize and sell its property (Minn.Stat.Ann., §§ 297A.33 and 297A.40 (1972)) for payment of the tax. The state could not, however, sue the individual consumer; rather, it would be the responsibility of the telephone company to sue its subscriber, pursuant to Minn.Stat.Ann., § 297A.03, Subd. 1 (1972), to collect the amount of the tax it had already paid to the

analysis may ultimately be found incorrect, we cannot say at this juncture that the argument is made in bad faith.[6]

 The state argues that the Minnesota sales tax is a vendee tax, and 'that as such, is not properly includable in the base on which the Federal Communications Tax is computed. Both the state and the government acknowledge that the Minnesota Supreme Court has yet to interpret the sales tax as either a vendee or vendor tax. For us to decide the case in favor of the plaintiffs would require us to interpret the statutes of Minnesota. The mere possibility that the Minnesota Supreme Court would hold contrary to the state's position demonstrates that the government is asserting a legitimate position on an unanswered question and that this court's inquiry on the merits as required by *Williams Packing* has been fully discharged.

The order of dismissal by the district court for lack of jurisdiction is affirmed.

state. Minn.Stat.Ann., § 297A.03, Subd. 1 (1972), states that the general sales tax is "a debt from the purchaser to the seller recoverable at law in the same manner as other debts." Thus, the statutes create direct debtor-creditor relationships between the state and the retailer (Minn.Stat.Ann., § 297A.40), and between the retailer and the consumer, but not between the state and the consumer.

The above statutory provisions clearly indicate that the telephone company in Minnesota is actually the taxpayer, and it must then recover from the subscriber the amoưɪt of tax it was required to pay. The express terms of the Minnesota statutes confirm this characterization. For example, Minn.Stat. Ann., §§ 297A.01, Subd. 9; 297A.26; 297A.31, Subds. 1 and 2; 297A.35, Subd. 4; and 297A.43 all speak of the "taxpayer" when referring to the retailer or the person required to file the sales tax return. Brief of Appellee, at 23–26.

6. As noted in the appellee's brief, the government's position is consistent with that taken with respect to the similar Iowa Retail Sales Tax. In Rev.Rul. 73–184, 1973–1 Cum.Bull. 442, the IRS stated:

The Iowa Retail Sales Tax is imposed upon the *gross receipts* from certain sales, including sales of communication services (section 422.43 of the Iowa Code Annotated). Retailers are required, as far as practical, to add the tax to the sales price or charge, and *when so added the tax shall constitute a part of the price or charge* (section 422.48 of the Iowa Code Annotated).

Although the Iowa Retail Sales Tax is imposed on the gross receipts from sales and not on the company providing the telephone service as in Revenue Ruling 69–151, *the Iowa law requires that the telephone company add the tax to the sale price or charge, and where so added such tax becomes part of the amount charged for telephone service.*

Accordingly, since section 4254(a)(1) of the Code requires that the amount on which communications tax shall be based shall include all charges for service included in the bill, it is held that a charge for Iowa Retail Sales Tax is includable in the tax base when computing Federal communications tax. (Emphasis added).