Robert B. GRAHAM, Sr.

v.

UNITED STATES of America, et al.

Civ. A. No. 82–5610.

United States District Court, E.D. Pennsylvania.

Aug. 19, 1983.

## MEMORANDUM OPINION

CAHN, District Judge.

The plaintiff, Robert B. Graham, Sr., asks this court to declare unconstitutional and to enjoin the enforcement of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324 ("TEFRA"). All of the defendants have moved to dismiss this action pursuant to Rule 12(b) of the Federal Rules of Civil Proce-

dure. As § 7421(a) of the Internal Revenue Code, 26 U.S.C.A. § 7421(a) (1982) ("The Anti-Injunction Act"), divests this court of subject matter jurisdiction over this dispute, the motions to dismiss will be granted.[1]

Plaintiff filed suit on December 17, 1982, *pro se*, against the United States of America, the United States Senate, the United States House of Representatives, Vice-President George Herbert Bush, as President of the Senate, Thomas P. O'Neill, Jr., as Speaker of the House, Edmund L. Henshaw, Jr., as Clerk of the House of Representatives, and William F. Hildenbrand as Secretary of the Senate. Plaintiff sought a temporary restraining order and a preliminary injunction as well as permanent injunctive and declaratory relief. Because he failed to establish any danger of irreparable harm, I denied the motion for a temporary restraining order on December 20, 1982.

Mr. Graham's suit is based on the claim that the manner in which TEFRA was enacted violated the "Origination Clause" of the United States Constitution. The Clause states, "All Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. Constitution, Art. I, § 7, cl. 1.

TEFRA began in the House of Representatives as H.R. 4961, the "Miscellaneous Revenue Act of 1981." The House passed H.R. 4961 on December 15, 1981; the Ways and Means Committee estimated that the bill's tax provisions would cause a net reduction in tax revenues of $976 million over five years. H.R.Rep. No. 404, 97th Congress, 1st Session 9 (1981). The bill was referred to the Senate Finance Committee, which on July 12, 1982 reported the bill under the original number, H.R. 4961, but under the new name of "TEFRA." S.Rep. No. 494, 97th Cong. 2d Sess. (1982), U.S. Code Cong. & Admin.News 1982, p. 781.

---

1. Defendants' Motions to Dismiss are based on several grounds in addition to the Anti-Injunction Act, including sovereign immunity, the Speech and Debate Clause, and the inability of certain named defendants to provide the relief sought. Because I hold that the Anti-Injunction Act poses a threshold bar to this suit, I do not find it necessary to reach these additional contentions.

In contrast to the House bill, the Senate version of H.R. 4961 was designed to *raise* revenues in the amount of approximately $99 billion over three years.

After passage by the full Senate, the bill was referred to a House-Senate conference committee. The committee reported the bill on August 17, 1982. The conference version of the bill continued to carry the House designation of H.R. 4961 but adhered closely in its provisions for raising revenue to the Senate version. On August 19, 1982, both Houses of Congress passed the bill following debate that included discussion of the same Origination Clause issue raised in the instant suit. Following certification by the Clerk of the House that this tax bill had originated in the House of Representatives, the President of the United States signed it into law on September 3, 1982, as Public Law 97–248.

■ The United States and co-defendants argue that, whatever the merits of Mr. Graham's constitutional claim may be, he cannot maintain this action in a U.S. district court under the Anti-Injunction Act.[2] Mr. Graham's proper course of action in pursuit of the relief sought here, they contend, is either to sue the United States for a tax refund in the Court of Claims or in a U.S. district court, in accordance with 28 U.S.C.A. §§ 1346(a)(1), 1491 (1982), or to bring an assessment suit in the United States Tax Court under I.R.C. §§ 6213(a), 6532(a). Mr. Graham responds to this argument by asserting that the purpose of his suit is not to prevent tax collection, but rather to remedy a breach of the Constitution. Brief for the Plaintiff at 8; Plaintiff's Motion in Opposition at 2, 5–6.

But Mr. Graham's frequent reiteration that this is a non-tax suit does not make it so. While the law that he contends was breached by the enactment of TEFRA is part of the Constitution, the relief that he seeks is nonetheless the prevention of tax collection. His complaint asks this court to declare that TEFRA "is null and void and of no force and effect as a statute(s) of the United States," Complaint at 8,[3] and his Motion for a Preliminary Injunction, at 3, asks that, "on a final hearing, defendants ... be permanently enjoined from executing or implementing H.R. 4961, the Tax Equity and Fiscal Responsibility Act of 1982." The consequence of granting this relief could only be characterized as a restraint on the "assessment or collection" of a tax within the meaning of I.R.C. § 7421(a).

Furthermore, the Supreme Court in *Alexander v. Americans United*, 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974), explicitly rejected the proposition that constitutional challenges to tax collection are without the Anti-Injunction Act's purview. In *Alexander*, the IRS had revoked the tax-exempt status of a non-profit educational corporation because of alleged violations of statutory proscriptions against lobbying activities. Two of the corporation's donors challenged the constitutionality of the statutory proscriptions and sought an injunction requiring the Service to reinstate the corporation's tax-exempt status. The Court found that "(it is) unmistakably clear that the constitutional nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti-Injunction Act." 416 U.S. at 759, 94 S.Ct. at 2058 (citations omitted). The Anti-

**2.** Section 7421(a) states, in relevant part, "(N)o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

**3.** Plaintiff styles his complaint as a "Complaint for a Declaratory Judgment" and brings his suit under the Declaratory Judgment Act, 28 U.S. C.A. § 2201 (1982). But the provisions of that

Act specifically exclude controversies "with respect to Federal taxes." As Mr. Graham's suit is barred by the Anti-Injunction Act, it also cannot be maintained under the Declaratory Judgment Act, since "(t)here is no dispute that the federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti-Injunction Act." *Bob Jones University v. Simon*, 416 U.S. 725, 732, n. 7, 94 S.Ct. 2038, 2044, n. 7, 40 L.Ed.2d 496 (1974).

Injunction Act thus applies to Mr. Graham's suit.[4]

[redacted] There is an exception to the application of the Anti-Injunction Act, but it is a narrow one. To avoid the Act's reach, a plaintiff must satisfy the two-part test of *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962), a standard that the Supreme Court reaffirmed and described as "stringent" in *Bob Jones University v. Simon,* 416 U.S. 725, 737, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974). The plaintiff must show both that he faces irreparable injury such that equity jurisdiction exists and that the government has no chance of ultimately prevailing on the merits of the dispute.

[redacted] Mr. Graham has at no point alleged that he will suffer irreparable injury if the operation of TEFRA is not enjoined. At worst, he is compelled by TEFRA to pay taxes for which he may sue for a refund in the manner described above. He alleges no possibility of financial ruin pending a refund suit such as the Supreme Court found sufficient to suspend the application of the Anti-Injunction Act in *Miller v. Standard Nut Margarine Co. of Florida,* 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932). In *Miller,* the Commissioner's levy threatened to force the plaintiff to sell his product at a loss, thus destroying his business, and was capricious in light of earlier determinations that plaintiff's product was not taxable oleomargarine.[5] Mr. Graham has argued that he faces irreparable injury "as a taxpayer and corporate owner" if TEFRA is not enjoined, in that he will be forced to live under a law whose passage he believes to have been unconstitutional. But such beliefs do not constitute the sort of individuated, tangible harm required to support equity jurisdiction.

The failure to establish equity jurisdiction is by itself sufficient to deny Mr. Graham the exception to the Anti-Injunction Act. However, even if he could prevail on that point, the merits of his claim are not so unassailable that this court could find that, "under the most liberal view of the law and the facts, the United States cannot establish its claim ..." *Enochs,* 370 U.S. at 7, 82 S.Ct. at 1129. Before passing TEFRA Congress considered, and rejected, the argument that the bill's enactment had violated the Origination Clause.[6] While this does not mean that Mr. Graham's constitutional argument necessarily is wrong, it is a strong indication that upon a full hearing the government could provide some legal support for TEFRA's validity.

Perhaps realizing that the weight of past decisions supports the defendants' position, the plaintiff has argued, "To rule in this cause on the basis of 'precedent' would only serve to promote further debasement of the Constitution, for what was wrong before cannot be corrected by keeping it wrong today." Plaintiff's Motion in Opposition at 2. With this thought in mind, I reviewed the cases supporting the defendants' position and I see no reason to call their soundness into question. I would add that, while the "case law" system may have its drawbacks, it carries numerous benefits for the legal system as well, such as making the interpretation of our laws more consistent and their application more predictable.

Defendants' Motions to Dismiss will be granted.

4. Plaintiff offers no legal or textual support for his contention that "the Act applies to government employees, persons getting a special privilege from the government, or corporations. It does not apply to the plaintiff." Plaintiff's Motion in Opposition at 3.

5. It should be noted that in *Bob Jones University,* 416 U.S. at 742–5, 94 S.Ct. at 2048–50. Justice Powell suggests that *Standard Nut* represents the greatest expansion of the exception to the Anti-Injunction Act, an exception that the Court subsequently sought to narrow definitively in *Williams Packing* by emphasizing the requirement that the Government's position be shown plainly to lack a legal basis. Thus, even if Mr. Graham could show circumstances comparable to those of *Standard Nut,* the Anti-Injunction Act today might well still apply.

6. For a fuller account of TEFRA's enactment, *see Moore v. U.S. House of Representatives,* 553 F.Supp. 267, 1983–1 U.S. Tax Cas. (C.C.H.) para. 9108 (D.D.C. Dec. 16, 1982), *appeal docketed,* No. 83–1077 (D.C.Cir. Jan. 21, 1983).