**AMERICAN SOCIETY OF ASSO-CIATION EXECUTIVES (ASAE), Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civil Action No. 95–918(SS).**

United States District Court, District of Columbia.

Oct. 29, 1998.

Bruce J. Ennis, Jr., Nory Miller, Jenner & Block, Washington, DC, for American Society of Association Executives, plaintiff.

Samuel Alvin Mitchell, U.S. Dept. of Justice, Tax Div., Donald J. Gavin, U.S. Dept. of Justice, Washington, DC, for U.S., defendant.

## OPINION

SPORKIN, District Judge.

This action to recover a refund of $56,900 in income taxes, arising out of plaintiff's election to apply the "proxy tax" option in 26 U.S.C. § 6033(e)(2) to its lobbying expenditures in fiscal year 1994 is presently before the Court on summary judgment motions by both the plaintiff and the defendant. At a hearing held before this Court on September 25, 1998 both sides agreed that the questions before the Court are questions of law, that there are no factual issues to be resolved and, accordingly, that the Court should rule on the motions.

Plaintiff, the American Society of Association Executives ("ASAE"), is a tax-exempt trade association under 26 U.S.C. § 501(c)(6) composed of approximately 22,300 association executives and staff members. ASAE engages in lobbying on behalf of its members and contends that the enforcement provisions of the lobbying tax, codified at 26 U.S.C. §§ 162(e)(3), 162(e)(5)(C) and 6033(e), impose financial "penalties" on tax-exempt associations (and their members) that engage in lobbying and are, therefore, unconstitutional. ASAE argues that the challenged provisions violate the First Amendment by deterring ASAE and its members from exercising their rights to freedom of expression and association and to petition the government. ASAE also argues that the challenged provisions violate the Equal Protection clause of the Fifth Amendment by favoring private individuals and for-profit corporations over tax-exempt associations. Although it only was affected by the proxy tax and recordkeeping provisions of the statute, ASAE states that because it is raising a facial challenge this Court has jurisdiction to consider the challenged provisions in their entirety and not merely the provisions to which ASAE was subjected.

### I. Procedural History

This is not the first time that this case has been before this Court. In April 1994 this Court issued a Memorandum Opinion and Order in response to a declaratory judgment action challenging the lobbying tax brought by ASAE and ten other associations. In that action the plaintiffs asked this Court to declare the lobbying tax unconstitutional and to enjoin the Government from enforcing it. This Court held that the Anti–Injunction Act ("AIA"), 26 U.S.C. § 7421(a), deprived it of jurisdiction over the case and that the two recognized exceptions to the AIA were inapplicable because: (1) plaintiffs had not shown that the Government could not prevail under

any circumstances, as required by *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); and (2) plaintiffs had alternative legal remedies available to them. *See South Carolina v. Regan,* 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984) (recognizing exception to AIA where plaintiff is left with no alternative legal remedy).

Regarding their alternative legal remedies, the Court held that the plaintiffs could either elect to pay the "proxy tax" on tax-exempt associations created by § 6033(e) and then bring a tax refund action in the United States District Court, or if the plaintiffs elected not to pay the proxy tax and instead notified their members, the members could then bring individual suits challenging the requirements of §§ 162(e) and 6033(e) in the United States Tax Court. Accordingly, the Court dismissed the plaintiff's complaint based on a lack of subject matter jurisdiction under the AIA. *See American Society of Ass'n Executives v. Lloyd H. Bentsen,* 848 F.Supp. 245 (D.D.C.1994) (hereinafter "*ASAE I*"). Familiarity with the Court's prior opinion is assumed.

Following this Court's decision in *ASAE I* plaintiff chose not to notify its members and instead paid its proxy tax liability for fiscal year 1994, which was $56,900. ASAE subsequently submitted an amended return to the Internal Revenue Service ("IRS") requesting a refund of the $56,900 on the ground that the lobbying tax provisions applicable to tax-exempt associations violate the First and Fifth Amendments to the United States Constitution. After six months had passed without a response from the IRS, ASAE filed this lawsuit. In its complaint, filed on May 15, 1995, ASAE requests: (1) a refund of the $56,900 plus interest, costs and attorney's fees; and (2) injunctive relief preventing the Government from enforcing the lobbying tax against it or its members. *See* Cmplt. p. 17.

## II. The Lobbying Tax

The challenged provisions, codified at 26 U.S.C. §§ 162(e)(3), 162(e)(5)(C), and 6033(e), were enacted by section 13222 of the Omnibus Budget Reconciliation Act of 1993 (H.R. 2264, 103d Cong., 1st Sess.(1993)) (the "Act").

Prior to passage of the Act, section 162(e) of the Code allowed businesses to deduct direct lobbying expenses as business expenses. The Act amended the Code to withdraw the deduction for lobbying expenses incurred by businesses. The Act also contains provisions specifically aimed at enforcing Congress' mandate against certain tax-exempt membership organizations that engage in lobbying. Those tax-exempt organizations previously had been able to deduct their lobbying expenses while their members could deduct their membership dues. Congress concluded that allowing such tax-exempt organizations to deduct their lobbying expenses amounted to a government subsidy of their lobbying activities.

In addition to withdrawing the tax deduction, the Act also includes provisions designed to close certain loopholes thus preventing the affected taxpayers from skirting Congress' intent. These enforcement provisions include: (A) the "flow through provision;" (B) the "allocation provision;" (C) the "proxy tax;" (D) the "estimation provision;" (referred to by ASAE as the "overestimation penalty" and the "underestimation penalty"); and (E) the "carryover provision."

## A. Flow Through Provision § 162(e)(3)

The flow through provision provides:

No deduction shall be allowed under subsection (a) for the portion of dues or other similar amounts paid by the taxpayer to an organization which is exempt from tax under this subtitle which the organization notifies the taxpayer under § 6033(e)(1)(A)(ii) is allocable to expenditures to which paragraph (1) applies.

26 U.S.C. § 162(e)(3). This provision was designed to prevent taxpayers who use tax-exempt associations to lobby on their behalf from retaining a tax subsidy for their lobbying activities through the tax-deductible dues paid to such associations. Thus, it would prevent lobbying expenses not otherwise deductible from being made deductible merely by conducting lobbying through a tax-exempt association. A member of such an association may not deduct that portion of the dues paid which is attributable to the association's lobbying expenses.

## B. Reporting Requirements and Allocation Provision § 6033(e)(1)

The reporting requirements of § 6033(e)(1) work in conjunction with the flow through provision. Section 6033(e)(1) requires tax-exempt organizations to include on their annual tax returns the total amount of their lobbying expenses and the total amount of dues allocable to lobbying. 26 U.S.C. § 6033(e)(1)(A)(i). The organizations also are required under the section to notify their members of the non-deductible portion of the members' dues. 26 U.S.C. § 6033(e)(1)(A)(ii).

The section also adds an "allocation provision" designed to prevent taxpayers from evading the withdrawal of the tax deduction for lobbying expenses. The provision requires that when calculating the percentage of dues attributable to lobbying, the association must treat the lobbying expenses as having been funded first by membership dues rather than from some other form of income. The provision states as follows:

For the purposes of this paragraph—

(i) In General—Expenditures to which section 162(e) applies shall be treated as paid out of dues or other similar amounts to the extent thereof.

26 U.S.C. § 6033(e)(1)(C). This provision is justified on the basis that a restriction is necessary to avoid skirting Congress' intent. It is argued that without the rule, taxpayers could claim deductions for dues paid to tax-exempt organizations that engage in lobbying, because the organization could simply allocate its lobbying expenses to non-dues income, which may be tax-exempt.

## C. Notification Provision and Proxy Tax § 6033(e)(2)

Section 6033(e)(2) gives tax-exempt associations the option of (1) placing the burden and responsibility of complying with the restriction on their members through a notification provision, or (2) paying the tax themselves in the form of a "proxy tax," which would not interfere with the members' right to deduct membership dues. The pertinent parts of section 6033(e)(2) provide:

If an organization—

(i) elects not to provide the notices described in paragraph (1)(A) for any taxable year, or

(ii) fails to include in such notices the amount allocable to expenditures to which section 162(e)(1) applies (determined on the basis of actual amounts rather than the reasonable estimates under paragraph (1)(A)(i)), then there is hereby imposed on such organization for such taxable year a tax in the amount equal to the product of the highest rate of tax imposed by section 11 for the taxable year and the aggregate amount not included in such notices by reason of such election or failure.

26 U.S.C. § 6033(e)(2). As drafted, the notification provision and the proxy tax work in conjunction to further the IRS's goal of enforcing the withdrawal of the business deduction for lobbying expenses. Affected associations have the option of reporting to their members the non-deductible portion of their dues, or if such reporting imposes too heavy a financial burden, paying the tax through the "proxy" provision, as ASAE did in this case.

## D. The Estimation Provision

The estimation provision, § 6033(e)(1)(A)(ii), requires tax-exempt organizations that elect to notify their members (in lieu of paying the proxy tax) to estimate their lobbying expenses for the coming year and to make the notification to members concurrently with dues assessments or payments. The provision provides that the organization "shall, at the time of assessment or payment of such dues or other similar amounts, provide notice to each person making such payment which contains a reasonable estimate of the portion of such dues or other similar amounts to which such expenditures are allocable." 26 U.S.C. § 6033(e)(1)(A)(ii).

## E. The Carryover Provision

The carryover provision, § 6033(e)(1)(C)(ii), requires tax-exempt organizations to account for any lobbying expenses in excess of dues collected in a particular year by carrying the excess over and paying it with dues collected the following

year. The provision provides that "[i]f expenditures to which section 162(e)(1) applies exceed the dues or other similar amounts for any taxable year, such excess shall be treated as expenditures to which section 162(e)(1) applies which are paid or incurred by the organization during the following taxable year." 26 U.S.C. § 6033(e)(1)(C)(ii).

The enforcement provisions apply only to tax-exempt organizations and their members. *See* 26 U.S.C. §§ 162(e)(3), 6033(e)(1)(B)(i). ASAE does not challenge the constitutional power of Congress to withdraw tax-exempt status. Nor does it attack the portions of the Act that apply to commercial businesses. However, it contends that the enforcement provisions, as applied to tax-exempt organizations, are unconstitutional because they impermissibly hinder the exercise of its First Amendment rights and violate its Fifth Amendment right to equal protection.

### III. Discussion

#### A. Summary Judgment Standards

A party is only entitled to summary judgment if the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact. *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1998 WL 698396 (D.C.Cir.1998); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). To award summary judgment the court must accept all evidence offered by the non-moving party as presumptively valid and draw all justifiable inferences in the non-movant's favor. *Smith–Haynie v. District of Columbia*, 155 F.3d 575, 578–79, 1998 WL 642582, * 3 (D.C.Cir. Sept.22, 1998).

#### B. First Amendment Claims

As is often the case in First Amendment challenges, the parties conflict over the appropriate standard of review, with ASAE arguing that the Court should apply a "strict scrutiny" analysis and the Government contending that the proper standard is the "rational basis" test. ASAE contends that the Court should apply the strict scrutiny analysis because: (1) the challenged provisions do not merely withdraw a subsidy from trade associations that lobby, but impose an affirmative burden or "penalty" on their speech; and (2) the challenged provisions are content based. The Government argues that Congress simply has denied a tax subsidy for lobbying without imposing an affirmative burden and without regard to the view point of the lobbyist, and that, therefore, its action does not implicate the First Amendment and only is subject to rational basis review.

There are two main standards of review in First Amendment jurisprudence: "strict scrutiny" for content-based restrictions on speech; and "intermediate scrutiny" for content-neutral restrictions. *Blount v. Securities and Exchange Commission*, 61 F.3d 938, 941–42 (D.C.Cir.1995) (citing *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 641, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)). Strict scrutiny requires that the regulations at issue be narrowly tailored to serve a compelling state interest. *Lutheran Church–Missouri Synod v. F.C.C.*, 141 F.3d 344, 353 (D.C.Cir.1998). Under intermediate scrutiny a statute will be upheld "if it furthers an important government interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *U.S. v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 798–800, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). However, the regulation "need not be the least restrictive means of doing so." *Ward*, 491 U.S. at 798, 109 S.Ct. 2746.

Although strict scrutiny and intermediate scrutiny are the two principal standards for analyzing statutes under the First Amendment, the Supreme Court has also developed other standards for analyzing the restriction of speech depending on the particulars of the speech or the type of regulation at issue. In analyzing statutes involving taxation or the allocation of public funds the Supreme Court has applied a standard even more deferential than intermediate scrutiny. In *Regan v. Taxation With Representation*, 461 U.S. 540, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983) ("*TWR*"), a case involving First Amendment and Equal Protection challenges to an inter-

nal revenue statute which granted tax exemptions for certain non-profit organizations that did not engage in substantial lobbying, the Supreme Court held that "statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose." *Id.*, 461 U.S. at 546, 103 S.Ct. 1997. In *Cammarano v. United States*, 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959), a case involving, *inter alia*, a First Amendment challenge to a Treasury Regulation which provided that sums of money expended by individual or corporate income taxpayers for defeat of legislation were not deductible from gross income, the Supreme Court held that the statute at issue was constitutional so long as its purpose was not to "suppress[ ] dangerous ideas." *Id.*, 358 U.S. at 512, 79 S.Ct. 524 (quoting *Speiser v. Randall*, 357 U.S. 513, 519, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958)).

The Supreme Court applied this lower rational basis standard in these cases because of the broad authority of the legislature in the area of taxation and the allocation of public funds, noting in *TWR* that "[l]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes," *Id.*, 461 U.S. at 547, 103 S.Ct. 1997, and in *Cammarano* that the statute at issue "appears to us to express a determination by Congress that since purchased publicity can influence the fate of legislation which will affect, directly or indirectly, all in the community, everyone in the community should stand on the same footing as regards its purchase so far as the Treasury of the United States is concerned." *Id.*, 358 U.S. at 513, 79 S.Ct. 524; *see also Rust v. Sullivan*, 500 U.S. 173, 192, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) ("The Government can without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program").

Despite the broad authority of Congress in these areas, not all tax and public funding statutes are analyzed under the rational basis test. In a case involving a tax on the press, the Supreme Court applied a strict scrutiny standard, noting that "[d]ifferential taxation of the press... places such a burden on the interests protected by the First Amendment that we cannot countenance such treatment unless the State asserts a counterbalancing interest of compelling importance that it cannot achieve without differential taxation." *Minneapolis Star & Tribune Co. v. Minnesota Com'r of Revenue*, 460 U.S. 575, 585, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983). However, the Supreme Court later explained this case as meaning only that strict scrutiny must be applied to regulations that target a small subset of media organizations in ways that threaten to "distort the market for ideas." *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 660, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (determining that intermediate scrutiny must apply); *see also Bell-South Corp. v. F.C.C.*, 144 F.3d 58, 68 (D.C.Cir.1998).

██ After reviewing the parties' papers and hearing argument, this Court concludes as it did in *ASAE I*, that the challenged provisions do not impose "penalties" on tax-exempt associations that engage in lobbying, but merely enforce the decision of Congress to eliminate the lobbying subsidy. While ASAE points out in its papers (as it did at oral argument) that "there are readily available alternatives that would be more effective in patching loopholes without imposing *additional* burdens on speech," Pltf's Memorandum in Opposition to Defendant's Motion for Summary Judgment p. 13, this Court notes that even intermediate First Amendment scrutiny (a higher level of scrutiny than the Court has applied in this case) does not entail a "least restrictive means analysis." *Bell-South*, 144 F.3d at 70. Congress was not required to enact the statute that imposed the lowest cost on ASAE. Its failure to do so does not constitute a "penalty" and would only do so if the statute denied ASAE "an independent benefit on account of its intention to lobby," *see TWR*, 461 U.S. at 544, 103 S.Ct. 1997, which this Court concludes it does not.

The Court also rejects ASAE's contention that the challenged provisions discriminate on the basis of the content of the taxpayer's speech. ASAE alleges that the provisions unconstitutionally hinder "speech about legis-

lation." Pltf's Memorandum p. 22. However, speech about legislation encompasses the entire spectrum of possible viewpoints and is, therefore, viewpoint neutral. In *TWR* the Supreme Court upheld a statute similar to the provisions at issue here[1] against a First Amendment challenge. The Court found the challenged statute to be content neutral, stating that "[t]he case would be different if Congress were to discriminate invidiously in its subsidies in such a way as to 'aim at the suppression of dangerous ideas.'" *Id.*, 461 U.S. at 541, 103 S.Ct. 1997 (quoting *Cammarano*, 358 U.S. at 513, 79 S.Ct. 524). Likewise, this Court concludes that in enacting these provisions Congress simply has eliminated the tax subsidy for lobbying without regard to the point of view of the lobbyist.

Thus, even after drawing all inferences in favor of the plaintiff, as must be done on this summary judgment motion, this Court holds that the rational basis test is the appropriate standard of review. As this Court stated in *ASAE I:*

> Upon close examination of this case it becomes obvious that this is less an instance of penalizing the exercise of a fundamental right than a case of Congress deciding not to subsidize the exercise of that right. The United States is not obligated to subsidize any person's lobbying.
>
> The Act is not a restriction on the content of speech. The Act does not discriminate against plaintiffs if they seek to influence legislation; the Act simply advances Congress' purpose that such speech not be paid for with pretax dollars. Neither does the Act single out particular ideas.

*ASAE I,* 848 F.Supp. at 249. This is essentially the same reasoning applied in *TWR* where the Supreme Court held that the District of Columbia Court of Appeals' opinion "suggests that strict scrutiny applies whenever Congress subsidizes some speech but not all speech. This is not the law." *Id.* 461 U.S. at 548, 103 S.Ct. 1997.

■ Accordingly, this Court concludes that the challenged provisions of the lobbying tax must be rationally related to a legitimate government interest in order to be constitutional. For the reasons set forth in *ASAE I* (and quoted below) this Court holds that the provisions *are* rationally related to Congress' intent to eliminate the subsidy for lobbying.

Without the allocation, estimation and carryover provisions that implement the flow-through and notification rules, taxpayers could evade the Act's withdrawal of the business deduction for lobbying expenses by paying membership dues to § 501(c)(6) tax-exempt associations that would lobby on their behalf. Because of its tax-exempt status, the association would pay no tax on the membership dues and the members would be able to deduct the dues under 26 U.S.C. § 162(a). Congress enacted the flow-through and notification rules along with the allocation, estimation and carryover provisions to close this loophole.

While it is possible that there may have been a less costly or more efficient way of eliminating the subsidy for lobbying, Congress was not required to enact it. ASAE's papers are rife with "less convoluted," "less burdensome," "less complicated," and "more effective" ways Congress could have withdrawn the business tax deduction for lobbying expenses. However, ASAE's contention that Congress must use a "tailored mechanism," *see* Pltf's Memorandum p. 20, or a "precise" method to "remov[e][ ] a tax exemption," *see* Pltf's Memorandum p. 21 n. 20, is without merit.

This Court concludes that the challenged provisions fail to rise to the level of a constitutional violation, and that this Court is not the proper forum for an attempt to rewrite the legislation that has been enacted. Therefore, this Court finds no basis to alter its prior ruling on this issue and reiterates those conclusions here:

> The principal change to the lobbying landscape wrought by the Act is that speech aimed at effecting legislative change—lobbying—must now be paid for with after tax money. Sections 162(e)(3) and 6033(e) do not discriminate on the basis of content of

---

**1.** As noted above the statute at issue in *TWR* was an internal revenue statute granting a tax exemp-

tion to certain non-profit organizations that do not engage in substantial lobbying.

speech, therefore they do not implicate the First Amendment.

*ASAE I*, 848 F.Supp. at 249.

### C. Equal Protection

■ The dispute over which standard of review to apply to ASAE's equal protection claim has already been resolved. In *ASAE I* this Court held that because the lobbying tax · did not implicate the First Amendment, the case did not involve the deprivation of a fundamental right and as a result, the challenged provisions should be analyzed under the rational basis test. *See ASAE I*, 848 F.Supp. at 249. Applying the rational basis test this Court held that:

> [t]he Act is rationally related to Congress' intent to eliminate a tax subsidy for lobbying expenses. Fairly read, the enforcement provisions are a means to that end... It is clear that without some enforcement mechanism, it would be difficult to ensure that taxpayers comply with the withdrawal of the lobbying expense deduction. The Act, therefore, is rationally related to raising revenue and closing a potential loophole in the tax laws.

*Id.* Although in so holding the Court was giving the most liberal interpretation of the law and facts in favor of the United States, as required by *Williams Packing*, the Court adheres to its prior holding even after drawing all inferences in favor of ASAE as must be done on this summary judgment motion.

### D. Facial Challenge to the Statute

In addition to its challenge to the "proxy tax" provision, ASAE has also challenged other provisions of the lobbying tax. Specifically, ASAE argues that: (1) the notification provisions (consisting of the allocation provision, the carryover provision and the estimation provision) are unconstitutional; (2) the provision subjecting research and monitoring expenditures to the lobbying tax if the association later engages in lobbying on a related subject, § 162(e)(5)(C), penalizes lobbying and violates the First Amendment; and (3) the recordkeeping and reporting require-

ments, § 6033(e)(1), which require associations with lobbying expenses to track those expenses throughout the year and require associations which choose not to pay the proxy tax to estimate their lobbying expenses and dues receipts and to mail notice to each member, unduly burden expressive activities and violate the First Amendment.

■ Because ASAE paid the proxy tax it was not subject to any of these provisions, with the exception of the recordkeeping and reporting requirements. While ASAE has failed to set forth exactly how it was burdened by the recordkeeping and reporting requirements,[2] this Court nonetheless concludes that because they merely adopt the standard in 26 U.S.C. § 6001, which applies to all taxpayers, the requirements do not unduly burden expressive activities and are therefore constitutional.

■ The Government argues that ASAE lacks standing to challenge the research and monitoring provision and those portions of the notification provisions which were not applied to it because neither ASAE nor its members have incurred any of the "penalties" which ASAE contends flow from those provisions. ASAE argues that it does have standing to challenge the research and monitoring and notification provisions, and that this Court has jurisdiction to rule on the challenge, because it is raising a facial challenge to the entire statute.

Although the Court finds it unlikely that the other provisions of the lobbying tax challenged by ASAE would run afoul of the First Amendment under the rational basis test, the Court declines to scrutinize the constitutionality of those provisions of the lobbying tax that are not before it in this case. As the Supreme Court recently held in a case involving a facial challenge to 20 U.S.C. § 954(d)(1):

> [u]nless and until [the statute] is applied in a manner that raises concern about the suppression of disfavored viewpoints, however, we uphold the constitutionality of the

---

**2.** ASAE's president R. William Taylor stated in his June 8, 1995 Declaration that the recordkeeping requirements of the law impose a considerable burden on ASAE, but neither he nor ASAE have provided the exact cost of the research and recordkeeping requirements for fiscal year 1994. *See* Taylor Declaration of June 8, 1995 ¶ 16.

provision. *Cf. Red Lion Broadcasting Co. v. F.C.C.,* 395 U.S. 367, 396, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969) ("[W]e will not now pass upon the constitutionality of these regulations by envisioning the most extreme applications conceivable, but will deal with those problems if and when they arise") (internal citation omitted).

*National Endowment for the Arts v. Finley,* —— U.S. ——, ——, 118 S.Ct. 2168, 2179, 141 L.Ed.2d 500 (1998). Accordingly, the Court's ruling only extends to those provisions actually applied to ASAE.

### E. Injunctive Relief

■■■ ASAE has also requested injunctive relief. As noted in this Court's prior opinion, the AIA deprives the Court of jurisdiction over suits to restrain the assessment or collection of taxes. *If* the Court had found the challenged provisions unconstitutional, then the Government would be unable to prevail under any circumstances, the *Williams Packing* exception to the AIA would apply and injunctive relief potentially would be available to ASAE. However, that is not the case here since the Court has held that the challenged provisions pass constitutional muster.

ASAE concedes that in order for this Court to grant injunctive relief, the Court would have to find the challenged provisions unconstitutional. *See* Pltf's Memorandum in Opposition p. 10 n. 8 ("Thus, if this Court finds these provisions unconstitutional, it will have decided all issues material to future enforcement. Therefore, the exception to the Anti–Injunction Act for injunctive relief in cases where the government's position will not prevail, recognized in *Enochs v. Williams Packing & Nav. Co.,* 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962) would apply."). Accordingly, because the AIA deprives this Court of jurisdiction over plaintiff's request for injunctive relief, that request must be and hereby is denied.

### IV. Conclusion

For the reasons set forth above this Court holds that the challenged provisions of the lobbying tax, 26 U.S.C. § 162(e)(3), 162(e)(5)(C) and 6033(e) are constitutional as applied to ASAE and are constitutional on their face. Accordingly, the motion of ASAE is denied in its entirety and the motion of the United States is granted. An appropriate order is attached.