**Sally CONFORTE, Plaintiff,**

v.

**UNITED STATES of America, Fred T. Goldberg, Jr., Robert E. Withers, Ron Smith, Ben R. Dotson and Ten Unknown Named Agents of Internal Revenue Service, Defendants.**

**No. CV–N–91–69–HDM.**

United States District Court,
D. Nevada.

March 8, 1991.

Peter A. Perry, Reno, Nev., Darrell V. Rippy, Phoenix, Ariz., for plaintiff.

Brian Feldman, Washington, D.C., Rollin Thorley, Dist. Counsel, I.R.S., Las Vegas, Nev., for defendants.

## ORDER

McKIBBEN, District Judge.

### NATURE OF THE ACTION

The plaintiff, Sally Conforte ("Conforte"), commenced this action against the defendants, United States of America, Internal Revenue Service ("IRS"), and other named officers and agents of the IRS seeking (1) a preliminary and permanent injunction as to the sale of certain real property formerly titled in the name of Conforte pursuant to 26 U.S.C. § 7506; (2) an order quieting title to such property under 28 U.S.C. § 2410; and (3) damages pursuant to *Bivens* and 42 U.S.C. § 1985.

The IRS opposes the application for injunctive relief and contends the application should be denied because (1) Conforte has failed to effectuate proper service; (2) the doctrine of *res judicata* and collateral estoppel bar Conforte's claims; and (3) the *Bivens* claims are precluded because alternative remedies exist.

### BACKGROUND

Joseph and Sally Conforte have, for many years, owned and operated a brothel known as "The Mustang Ranch" in Storey County, Nevada. In the operation of that business they incurred substantial income and payroll tax liabilities. The Confortes' tax problems have been long-standing and protracted. They are well chronicled in the defendants' brief and will not be described here except to the extent necessary to understand the posture of the present litigation. Both Confortes were convicted for willful acts taken to evade or defeat federal income taxes for the last quarter of 1974 and the first three quarters of 1975. *United States v. Conforte*, 624 F.2d 869 (9th Cir.1980). In order to avoid incarceration on the payroll tax evasion conviction, Joseph Conforte fled to Brazil.

On November 24, 1982, Joseph Conforte executed a quit claim deed conveying his interest in the brothel and other real property, which is the subject of this litigation, to Sally Conforte. Thereafter, on November 26, 1982, Sally Conforte commenced a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Nevada (BK–N–82–966). The property on which the Mustang Ranch brothel is located and the real estate that is the subject of this litigation was a part of that bankruptcy estate. In the bankruptcy proceedings, the IRS filed a proof of claim in the amount of nineteen million, one hundred thousand, one hundred and forty-four dollars and fifty-five cents ($19,100,144.55) for income and payroll taxes. The bankruptcy court confirmed the Chapter 11 plan of reorgani-

zation on February 15, 1984. The plan called for the continued operation of the brothel and provided a six-year period for payment of all claims by Sally Conforte. It was anticipated that payments would come from the operation of the business and from the sale of assets, including real property. On January 24, 1985, Sally Conforte quit claimed to herself and Joseph Conforte the brothel and the subject real estate to be held by the two as community property. A restriction was contained in the quit claim deed making the conveyance subject to the orders of the bankruptcy court and the obligations under the second amended plan of reorganization.

In February 1990, the time for the Confortes to perform under the plan and pay the tax obligations expired. Most of the taxes remained unpaid. Since the Confortes represented to the IRS that a sale of the property was imminent, the Confortes and the IRS entered into a stipulation in May 1990 to modify the confirmed plan of reorganization by extending the deadline for payment of the taxes to June 30, 1990. A portion of the real property, the subject of this litigation, which was not related to the operation of the brothel, was transferred by the Confortes to the United States to be sold in partial satisfaction of the tax liabilities. It is the sale of these parcels of property which Conforte now seeks to enjoin. As a further condition of the stipulation, the Confortes agreed to make monthly payments of seventy-five thousand dollars ($75,000.00) and to timely file and pay 1989 federal income tax liability. The agreement also gave the IRS the right to convert the case to a liquidation under Chapter 7 of the Bankruptcy Act without further hearing if the sale, which Conforte represented would be made through a public offering, was not consummated prior to June 30, 1990. Whether a further extension would be granted was to be in the "sole discretion" of the government.

In July 1990, the Confortes again requested an extension when it appeared the sale would not be consummated. The government was again given the right to convert the case within its sole discretion if the property was not sold. Pursuant to the stipulation, all of the remaining parcels of real estate owned by the Confortes, which were not related to the brothel, were transferred immediately to the United States. When the Confortes missed the July deadline, they discussed with the IRS a private sale of the brothel to a new corporation formed by Peter A. Perry, an attorney who attended every meeting between the Confortes and the IRS, and who ultimately was involved in the purchase of the brothel at the sale conducted by the IRS.

When it became apparent that the parties could not agree to satisfactory terms of a private sale, the IRS exercised its discretion to convert the case to Chapter 7. The order converting the case was entered on September 18, 1990. The order gave the bankruptcy trustee discretion to operate the brothel if the trustee determined that was in the best interest of the bankruptcy estate. Pursuant to that order, an effort was made by the bankruptcy trustee to operate the brothel as a going business. Because of difficulties between the trustee and the Storey County officials and the Confortes, however, those efforts were unsuccessful. At a hearing before the bankruptcy court on September 21, 1990, the bankruptcy court denied the trustee the right to operate the brothel. The bankruptcy court also found that the estate had one primary pre-petition creditor, which was the IRS, that it was grossly undersecured and that the trustee should not operate or liquidate the estate assets for the benefit of only one creditor. Therefore, the automatic stay was terminated with respect to the real and personal property of the estate that was subject to taxes.

On September 21, 1990, the IRS took possession of the brothel in compliance with the bankruptcy court's order, and efforts were made to sell the property immediately. No effort was made or contemplated by the IRS to operate the brothel as a going business. The IRS set a minimum bid for the brothel, and on November 1, 1990, delivered form 4585, the minimum bid worksheet, to Peter Perry, the representative for the Confortes. The federal tax sale of the property was scheduled for No-

vember 13, 14 and 15, 1990. On those dates, the IRS conducted the sale by public auction, and the sum of one million four hundred and ninety thousand dollars ($1,490,000.00) was received for the real property on which the brothel was located; three hundred and nine-five thousand ($395,000.00) was received for the real property on which the trailer park was located; and one hundred and six thousand four hundred and twelve dollars ($106,-412.00) from the sale of personal property and four hundred and twenty-three dollars and thirty-three cents ($423.33) in cash. The purchaser of the brothel was Mustang Properties, Inc., owned by Peter A. Perry, who is one of the attorneys for the Confortes in this action.

The IRS then proceeded to notice for sale the other parcels of real property acquired under 26 U.S.C. § 7506. One of the sales was set for February 19, 1991. This sale was cancelled as a result of the filing of this action. The remaining parcels are to be sold on April 23, 1991.

## ANALYSIS

In determining whether injunctive relief should be granted, the court must apply the two alternative tests set out by the Ninth Circuit Court of Appeals in *City of Tenakee Springs v. Block*, 778 F.2d 1402, 1407 (9th Cir.1985) (citations omitted):

The first test requires that a court find (1) the moving party will suffer irreparable injury if the injunctive relief is not granted; (2) there is a substantial likelihood that the moving party will succeed on the merits; (3) in balancing the equities the non-moving party will not be harmed more than the moving party is helped; and (4) granting injunctive relief is in the public interest.... The second test requires the moving party to demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips sharply in his favor.

With these principles in mind, the court turns to an analysis of the issues raised by Conforte and the IRS.

The IRS first contends that Conforte has failed to effectuate proper service of the complaint and application for temporary restraining order in these proceedings. Rule 4(d)(4) of the Federal Rules of Civil Procedure provides that service on the United States requires delivering a copy of the summons and complaint to the United States attorney, or his designee, for the district where the action is brought and a mailing of the same by certified or registered mail to the Attorney General of the United States.

At the hearing of this application for preliminary injunction, counsel for Conforte represented that service on the officers of the United States was made on the United States in compliance with Rule 4 by sending a copy of the summons and complaint to the Attorney General of the United States by certified mail. In addition, a copy of the summons and complaint and all other moving papers were served personally on the United States attorney in Reno, Nevada. There now appears to be no serious dispute over this issue. Therefore, the court finds that Conforte has effected service properly under Rule 4(d)(4).

Next, the government summarily argues that the doctrines of *res judicata* and collateral estoppel should operate to bar Conforte from raising issues already addressed and determined by the bankruptcy court.

 The doctrine of *res judicata* operates to preclude the parties or their privies from relitigating issues that were, or could have been, raised in that action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877). Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case under the doctrine of collateral estoppel. *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

Here, Conforte alleges that the IRS, after it seized the Mustang Ranch, "wholly

and completely destroyed and wasted the going business of the Mustang Ranch." Conforte then sets forth several specific reasons why she contends the IRS wasted the asset. All of these matters allegedly occurred on or after September 22, 1990, when the IRS levied upon and seized the Mustang Ranch. None of these issues were presented to or litigated in the bankruptcy court, nor does it clearly appear that these issues might have been decided by the bankruptcy court. In addition, the issues decided in the prior bankruptcy proceedings were not identical to the principal issue presented in this action, which is whether the IRS wasted and destroyed the Mustang Ranch. Therefore, the court finds that Conforte is likely to prevail on her argument that the doctrines of collateral estoppel and *res judicata* do not bar litigation of Conforte's principal claim.

The IRS next contends that this court lacks subject matter jurisdiction. First, the IRS contends that Conforte lacks standing to initiate this action. The IRS asserts that since Conforte's Chapter 7 bankruptcy proceeding is still pending before the bankruptcy court and the transfers of the real property, which property is the subject of this action, were made pursuant to stipulations in the bankruptcy court, any action to void such transfers must be brought by the bankruptcy estate, not Conforte. Here, it is likely that Conforte will be able to show in these proceedings that the bankruptcy court does not have jurisdiction over the principal issues raised in connection with the sale of the property by the IRS and, therefore, Conforte has standing to proceed in this court.

The IRS next contends that this action is barred by the doctrine of sovereign immunity. As Conforte properly argues, the damage claims in this action are directed against the individual defendants only. Conforte seeks equitable relief to enjoin the sale of the assets by the IRS, and a declaration of the court quieting title to the subject property in Conforte.

Under 28 U.S.C. § 2410, the United States may be named as a party in any civil action or suit in any district court to quiet title. Therefore, the court finds it is likely that a full development of the facts could establish that the doctrine of sovereign immunity does not preclude consideration of the claims advanced by Conforte in this action.

▆▆ The IRS next contends that the Anti–Injunction Act, 26 U.S.C. § 7421, bars Conforte's application for injunctive relief. This court agrees. That act provides as follows:

> Except as provided in §§ 6212(a) and (c), 6213(a), 6672(b), 6694(c), and 7426(a) and and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

The language of the statute is clear and has been uniformly applied by the federal courts to bar suits before collection except in very limited and specific circumstances. The first exception relates to situations where a notice of deficiency is required under the provisions of the act and jurisdiction is, therefore, in the United States Tax Court. The second exception relates to those situations which involve a civil action commenced by a person other than the taxpayer. Neither of these circumstances is applicable in this case. The final exception is a judicially created one and, as the Supreme Court held in *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962), "[I]f it is clear that under no circumstances could the Government ultimately prevail, the central purpose of the Act is inapplicable and ... the attempted collection may be enjoined if equity jurisdiction otherwise exists." This exception is subject to a two-part test: first, there must be clear evidence that the government cannot prevail; and second, the court must be satisfied that the threat of irreparable injury for which there is no adequate legal remedy is substantial. *Bob Jones University v. Simon*, 416 U.S. 725, 737, 94 S.Ct. 2038, 2046, 40 L.Ed.2d 496 (1974).

In this case, while Conforte frames her pleadings as a suit for quiet title, it is clear

that what she seeks to do is to prevent the government from selling the property which she previously transferred by deed to the government to satisfy the tax liens. Further, a review of the complete record in this case establishes that Conforte has presented insufficient evidence to satisfy the court that, on the merits, the government could not prevail under any circumstances. While it is true Conforte has titled this case as one for equitable relief in the form of a quiet title proceeding, the pleadings in this case quickly dispel any notion that this is in fact a quiet title action. Conforte's primary contention is that the IRS wasted the asset known as the Mustang Ranch by exercising its right to seize and liquidate the property. Therefore, Conforte reasons that all the delinquent taxes have, in fact, been paid, and the IRS is not entitled to proceed with the sale of any additional real property to satisfy the tax liens.

At the time the IRS seized the Mustang brothel, it was not a "going business." The trustee in bankruptcy, in compliance with the order of the bankruptcy court, had previously discontinued any efforts to operate the Mustang Ranch. The United States had no duty to sell the property as a "going concern." The government properly observes that valuations had been furnished to the Confortes' attorneys, at which time they had the right to disagree with the amounts set forth and request a separate appraisal, and they took no action to do so.

The parties attempted to resolve the questions involving the valuation of the Mustang property and sell the property over a seven-year span in the bankruptcy court with no success. The IRS did not consider operating the brothel and had no obligation to do so. Under the circumstances of this case, its obligation was to sell the property after complying with the statutory notice requirements.[1] The sale of the property was consistent with the stipulations entered into by Conforte and the IRS on several occasions during the

course of the bankruptcy proceedings. In fact, it was counsel for Conforte who prepared the stipulations. The purpose of the stipulations was to expedite the sale of the property and the transfer of title to the property in the event Conforte was unable to raise the necessary funds to discharge the tax obligations which Conforte admits have been due and owing for many years. Under these circumstances, not only has Conforte failed to show that even under the most liberal view of the law and the facts, the United States cannot establish its claim, but indeed, it is not likely, under any view of the law and facts, that Conforte will be able to establish her claim in this action. Conforte has failed to establish the type of irreparable injury which is an essential prerequisite for injunctive relief in this case. She has also failed to show she will be successful on the merits.

Again, reference to the bankruptcy proceeding is illuminating. For many years the IRS, which was the principal creditor of Conforte, patiently waited for the sale of the Mustang Ranch to discharge a portion of the tax obligation and entered into stipulations under the terms of which the IRS withheld proceeding against other real property to discharge a portion of the debt. The parties, that is, Conforte and the IRS, clearly understood that in the event the Mustang Ranch could not be sold, the IRS would be permitted to proceed expeditiously and without interference by Conforte with the sale of the other assets of Conforte, which were the subject of the stipulations in the bankruptcy court.

If Conforte felt that she was harmed as a result of the alleged wasting of the asset by the bankruptcy trustee, the appropriate action should have been to file objections with the bankruptcy court and to litigate the matter there. As the court has previously observed, the reason the deeds were signed was to transfer ownership of the property to the United States so the United States could proceed expeditiously to sell the real property in the event the Mustang

---

1. In this case there is no assertion by Conforte that all statutory notices were not given timely

and properly.

Ranch was not sold to discharge the tax liability of Conforte. Therefore, the court can find little justification to further delay the sale of property under circumstances where Conforte has little likelihood of success on the merits of her claim. Here, the balance of hardship tips sharply in favor of the government. Further, the public interest is only negligibly impacted by this case.

In addition, this court finds that Conforte has failed to demonstrate she has no adequate legal remedy. The government properly observes that 26 U.S.C. § 7433, known as the Taxpayer Bill of Rights, was enacted by Congress to permit an aggrieved taxpayer to recover for actual economic loss caused by the reckless or intentional disregard of the Internal Revenue Code by IRS employees in the course of collection of taxes. Therefore, Conforte has an alternate form of redress in the event she believes that the actions of the IRS in proceeding to sell the Mustang Ranch rather than operate it constituted reckless or wanton conduct. Therefore, the court concludes Conforte has failed to establish that she can successfully assert an exception to the plain provisions of the Anti–Injunction Act.

Having concluded the Anti–Injunction Act bars this action of Conforte for a preliminary injunction, and finding that issue dispositive, it is unnecessary for the court to address the *Bivens* claims at this stage of the proceedings.

It is ORDERED that the motion of Sally Conforte for a temporary restraining order and preliminary and permanent injunction (# 2) is DENIED.