**CITY of GALT and the City of Galt Finance Authority, Plaintiff,**

v.

**UNITED STATES of America; United States Department of the Treasury; Internal Revenue Service; Nicholas F. Brady, Secretary of the Treasury of the United States; and Fred T. Goldberg, Jr., Commissioner of the Internal Revenue Service, Defendants.**

**No. Civ. S–92–0464–DFL–GGH.**

United States District Court, E.D. California.

Aug. 26, 1992.

Thomas G. Wood, Brown and Wood, San Francisco, Cal., for plaintiff.

Yoshinori H.T. Himel, Asst. U.S. Atty., Sacramento, Cal., Eric M. Casper, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

LEVI, District Judge.

This dispute arises out of certain bonds that were issued in 1986. The City of Galt and City of Galt Public Finance Authority ("Galt") seek a preliminary injunction against defendants ("IRS") prohibiting the IRS from declaring the interest on the bonds as taxable or from seeking to collect a rebate from Galt of certain monies known as arbitrage. For the reasons stated below, the court finds that the Anti–Injunction Act and the tax exception to the Declaratory Judgment Act bar this action.

### I.

The facts are complex and are in dispute. The concept of "arbitrage" is essential to an understanding of this case. According to the parties, arbitrage consists of:

the profit a bond issuer earns when the rate of return on its investment of the proceeds from the sale of its bonds exceeds the interest rate it is obligated to pay to the bondholders.

Under the Internal Revenue Code of 1986 ("I.R.C.") § 103(b)(2), bonds as to which the issuer has earned arbitrage—"arbitrage bonds"—lose their tax exempt status, such

that interest on arbitrage bonds is taxable to the bondholders. Under I.R.C. § 148(f)(1)–(3), the issuer may save the tax exempt status of the bonds by disgorging to the United States the arbitrage, that is, the profit earned, through what is called an "arbitrage rebate" payment. The regulations permit the IRS in certain circumstances to demand of an issuer that an arbitrage rebate be made within 60 days. If the issuer fails to pay the rebate, the IRS may begin audits of the bondholders. *See* Treas.Reg. § 1.148–8T(b)(1)(iv).

The rules concerning arbitrage and restricting the tax exempt status of arbitrage bonds apply generally to bonds issued *after* August 31, 1986. The parties vigorously contest whether the $26,290,000 of bonds at issue in this case were issued before or after August 31, 1986. The IRS takes the position that the bonds were issued after August 31, 1986, and has demanded that Galt disgorge arbitrage amounting to some $1.1 million.[1] If Galt fails to make the arbitrage rebate, the IRS intends to audit the bondholders and collect tax on the interest earned on the bonds. Galt alleges that the bonds were issued on August 29, 1986, and therefore are exempt from the arbitrage rules. The resolution of this controversy would require determination of certain factual disputes and would depend on how the term "issued" is defined. These matters will not be decided on this motion.

1. The IRS rests its characterization of the transaction on the fact that the underwriter's check, given in exchange for the bonds, was an insufficient funds check. The IRS contends that the August 1986 bond "issue" was a sham transaction.

2. In their pleadings in opposition to the motion for preliminary injunction, defendants relied on the Anti–Injunction Act only with respect to Galts' request to enjoin the IRS from declaring the bonds taxable. Since the IRS does not view the arbitrage rebate as a tax, the IRS did not contend that the Anti–Injunction Act barred plaintiffs' motion to enjoin the IRS from requesting the arbitrage rebate. In its motion to dismiss, however, defendants ask for dismissal of the entire action as barred by the Anti–Injunction Act. As stated later in text, no distinction can be drawn between the IRS' ability to

**II.**

Galt seeks to enjoin the IRS from any attempt to collect the arbitrage rebate and from declaring interest on the bonds taxable. The IRS argues that this action is barred by the Anti–Injunction Act ("the Act") and by the tax exception to the Declaratory Judgment Act. The Anti–Injunction Act provides, in pertinent part, that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." I.R.C. § 7421(a).[2] Similarly, the Declaratory Judgment Act exempts actions "with respect to Federal taxes" from its provision of declaratory relief. 28 U.S.C.A. § 2201 (West Supp.1992).[3] The IRS notes that the courts have consistently found that in the area of taxing authority "declaratory judgments and injunctions are rarely, if ever, granted." *See MCA, Inc. v. American Broadcasting Companies, Inc.*, 715 F.2d 475, 476 (9th Cir.1983).

Galt rests its argument concerning the Anti–Injunction Act on *South Carolina v. Regan*, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984).[4] In *Regan*, South Carolina sought to enjoin a provision of the tax code which required "that certain obligations, termed 'registration-required obligation[s],' be issued in registered, rather than bearer, form to qualify" as tax exempt. *Id.* at 371, 104 S.Ct. at 1110. South

seek the arbitrage rebate and its ability to seek tax on bondholders' interest: a demand for arbitrage rebate is a precondition to its ability to seek tax from bondholders.

3. The tax exception to the Declaratory Judgment Act is interpreted as consistent in scope with the Anti–Injunction Act. *See California by Deukmejian v. Regan*, 641 F.2d 721, 723 (9th Cir.1981) ("The federal tax exception to the Declaratory Judgment Act is at least as broad as the Anti–Injunction Act").

4. Under *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962), an exception to the Anti–Injunction Act exists if "it is clear that under no circumstances could the government ultimately prevail." Galt does not rely on this provision, nor could it.

Carolina argued that the provision effectively required it to issue its bonds as registered bonds in violation of the Tenth Amendment and sought declaratory and injunctive relief. Relying on the Anti–Injunction Act, the Secretary of the Treasury sought dismissal of the action. The Court found that the action was not barred because the Anti–Injunction Act only applies when there is an alternative remedy available to the taxpayer, typically a suit for refund following payment. The Court noted that the "Act was intended to protect tax revenues from judicial interference 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Id.* at 376, 104 S.Ct. at 1112, quoting *Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). However, when no such suit was possible or practical, the Court found that the Anti–Injunction Act would not apply. In finding no alternative remedy in the circumstances of the case, the Court rejected the suggestion by the Secretary that the purchasers of South Carolina's bonds could bring suit for refund challenging the legality of the tax code provision. The Court thought it highly improbable that any bondbuyer would volunteer as such a guinea pig:

> [T]o make use of this remedy the State 'must first be able to find [an individual] willing to subject himself to the rigors of litigation against the Service, and then must rely on [him] to present the relevant arguments on [its] behalf.' Because it is by no means certain that the State would be able to convince a taxpayer to raise its claim, reliance on the remedy suggested by the Secretary would create the risk that the Anti–Injunction Act would entirely deprive the State of any opportunity to obtain review of its claims.

*Id.* 465 U.S. at 380–81, 104 S.Ct. at 1115–16 (citations omitted).

■ The circumstances in this case are rather different than those in *Regan.* Here the bondholders already exist—no volunteers are needed—and the bondholders have a powerful incentive to defend the position that the bonds are nontaxable. Moreover, unlike South Carolina, which sought to preserve its ability to issue unregistered bonds, Galt primarily seeks to preserve the position of its bondholders and thereby to protect itself from their wrath. To permit Galt to sue in such circumstances would create a substantial exception to the Anti–Injunction Act. For example, as Galt conceded at oral argument, if Galt's theory of the scope of the Anti–Injunction Act is accepted, then an investment advisor, who has placed a client in a tax shelter, could sue to halt collection of tax in the event that the IRS found the shelter invalid. Yet the courts have uniformly held that such suits are barred by the Anti–Injunction Act. *See Educo, Inc. v. Alexander,* 557 F.2d 617, 620 (7th Cir. 1977); *Investment Annuity, Inc. v. Blumenthal,* 609 F.2d 1, 7–8 (D.C.Cir.1979), *cert. denied,* 446 U.S. 981, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980).

■ Finally, it appears that Galt itself has an alternative remedy; under newly issued regulations it may make the arbitrage payment and then seek a refund.[5] The new regulation at Temp.Treas.Reg. §§ 1.148–13T(a) & (c), provides that "an issuer may recover an overpayment" if the "overpayment was paid as a result of a mistake." Galt argues that this regulation would not permit it to voluntarily and deliberately pay the arbitrage rebate and then seek refund because its payment would not have been a "mistake."[6] The IRS counters that the regulation does not limit itself to mistakes of the issuer; according to the

---

5. The court notes that one district court has found that Treasury Regulation § 1.148–13T provides a procedure to seek refund of an arbitrage rebate in circumstances identical to this case. *See Housing Authority of the County of Riverside v. United States,* No. 91–3344 (C.D.Cal. July 23, 1992) (order of dismissal).

6. Galt does not contest the IRS' position that if the regulation does apply to mistakes by the IRS then a denial by the IRS of a refund would be reviewable in a court of law. *See United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983).

IRS the regulation also applies to mistakes by the IRS.

The language of the regulation is ambiguous as to what is meant by "mistake." Either interpretation offered by the parties is plausible, but on the whole the court finds the interpretation by defendants the more reasonable. The language used—"as a result of a mistake"—is openended, general language that appears designed to address a multitude of situations. By contrast to subsection (4) the chosen language is not limited to "arithmetic" mistakes. Moreover, the IRS' interpretation makes good sense and provides a remedy to bond issuers that is consistent with the remedies traditionally afforded to taxpayers. Although deference to "an agency's convenient litigating position would be entirely inappropriate," *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 213, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988), when the agency provides, in the course of litigation, an interpretation of its own regulations that is reasonable and consistent with the language of the regulations, that interpretation is entitled to some degree of weight. *See Martin v. Occupational Safety and Health Review Commission*, — U.S. ——, —— – ——, 111 S.Ct. 1171, 1175–76, 113 L.Ed.2d 117 (1991); *Idaho Department of Health and Welfare v. United States Department of Energy*, 959 F.2d 149, 152–53 (9th Cir.1992). This seems particularly appropriate when the regulation is new, addresses an area of agency procedure, and when the litigation posture of the agency may estop it from adopting a different interpretation in future phases of the litigation.

The existence of this refund remedy for Galt further distinguishes *Regan*, and the court finds for all of the reasons stated above that *Regan* is not controlling in the circumstances of this case.

**7.** [P]etitioner contends that the Act is inapplicable because this not a suit 'for the purpose of restraining the assessment or collection of any tax....' Under petitioner's theory, its suit is intended solely to compel the Service to refrain from withdrawing petitioner's § 501(c)(3) ruling letter ...

. . . .

### III.

The Anti–Injunction Act and the tax exception to the Declaratory Judgment Act bar not only Galt's request for declaratory relief and injunction concerning the tax status of the interest received by bondholders but also Galt's request for relief against the IRS' demand for an arbitrage payment. Although the arbitrage payment is not itself a tax, the demand for the payment is a necessary preliminary to the collection of tax and reflects the IRS' determination "that a failure to serve a notice of demand for payment on the issuer will jeopardize the assessment or collection of tax on interest paid or to be paid on the issue." Treas. Reg. § 1.148–8T(b)(1)(iv). Thus, the notice of demand is part of the IRS' tax collection procedures of tax owing by the bondholders on interest earned on non-tax free arbitrage bonds. It is plain from the pleadings in this case that Galt's purpose in bringing this portion of the action is to stop the IRS from collecting tax from its bondholders. In analogous circumstances, the Supreme Court rejected the argument advanced here by Galt that the IRS' characterization of bonds as taxable—leading to the demand for arbitrage rebate—may be viewed as an act distinct from its revenue collecting function. In *Bob Jones University v. Simon*, 416 U.S. 725, 738–39, 94 S.Ct. 2038, 2046–47, 40 L.Ed.2d 496 (1974), and *Alexander v. 'Americans United' Inc.*, 416 U.S. 752, 760, 94 S.Ct. 2053, 2058, 40 L.Ed.2d 518 (1974), the Court held that institutions seeking to contest their tax status could not bring suit for injunctive or declaratory relief against the IRS. The Court found in part that such a suit fell within the Anti–Injunction Act and the tax exception to the Declaratory Judgment Act because the action would restrain the collection of tax from donors.[7] The proper procedure was

[P]etitioner seeks to restrain the collection of taxes from its donors—to force the Service to continue to provide advance assurance to those donors that contributions to petitioner will be recognized as tax deductible, thereby reducing their tax liability. Although in this regard petitioner seeks to lower the taxes of those other than itself, the Act is nonetheless

for the institution to seek relief through a refund action.

For the above stated reasons, this action is dismissed.

IT IS SO ORDERED.

controlling. Thus in any of its implications, this case falls within the literal scope and the purposes of the Act.
*Bob Jones University v. Simon,* 416 U.S. at 738–39, 94 S.Ct. at 2041–42.

In *Alexander v. 'Americans United' Inc.,* 416 U.S. 752, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974), the Court found the action barred by both the

Declaratory Judgment Act and the Anti–Injunction Act.

I.R.C. § 7428, passed in 1976, altered the rule in *Bob Jones University* only with regard to I.R.C. §§ 501(c)(3), 509(a), and 4942(j)(3), concerning tax exempt organizations, and does not affect the reasoning in the text above.