Franklin S. CLARK, et ux., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

No. 92–32–CIV–3–BR.

United States District Court, E.D. North Carolina, Fayetteville Division.

Sept. 26, 1994.

Ronald E. Winfrey, Brian K. Manning, Robert G. Ray, Rose, Ray, Winfrey & O'Connor, Fayetteville, NC, for Franklin S. Clark, Theresa P. Clark.

G. Norman Acker, III, Asst. U.S. Atty., Raleigh, NC, for U.S., Margaret Richardson, J.R. Starkey.

### ORDER

BRITT, District Judge.

This matter is before the court on cross motions for summary judgment and on plain-

tiffs' renewed motion for a preliminary injunction. Plaintiffs claim that the notice provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) violate the Due Process Clause of the Fifth Amendment. Defendants assert that these notice provisions are constitutional and have also alleged that the court lacks jurisdiction over this action due to the Anti–Injunction Act, 26 U.S.C. § 7421 and the Declaratory Judgment Act, 28 U.S.C. § 2201. All motions have been fully briefed and are now ripe for decision.

## I. FACTS

The facts in this case are undisputed. Plaintiffs instituted this action to cease government efforts to collect additional federal income tax from them allegedly owed for the 1986 tax year. Plaintiffs were assessed these additional taxes as a result of adjustments made by the Internal Revenue Service (IRS) to the taxes due by certain partnerships and joint ventures in which plaintiffs had an investment interest. Plaintiffs refuse to pay the additional taxes on grounds that the statutes under which the IRS proceeded did not give them adequate notice and therefore violated their due process rights under the Fifth Amendment.

In May 1992, plaintiffs purchased 25 units of Integrated Cattle Systems V (ICS) as an investment for $25,000.00. ICS is a Texas limited partnership with over 100 limited partners. The purchase made plaintiffs a limited partner with less than a one percent interest in ICS. Granada Management Corporation is, and at all relevant times was, the general partner and tax matters partner for ICS.

In June 1983 plaintiffs purchased 25 units of Granada I as an investment for $25,000.00. Granada I is a Texas limited partnership with over 100 limited partners. The purchase made plaintiffs a limited partner with an interest of less than one percent of the total subscription to Granada I. Granada Management Corporation is, and at all rele-

vant times was, the general partner and tax matters partner for Granada I.

In March 1984 plaintiffs purchased 320 units of Granada II as an investment for $320,000.00. Granada II is a Texas limited partnership with over 100 limited partners. The purchase made plaintiffs a limited partner owning less than a one percent interest in Granada II. Granada Management Corporation is, and at all relevant times was, the general partner and the tax matters partner for Granada II.

During 1986 ICS, Granada I and Granada II were partners in two entities known as Joint Venture IX–86 and Joint Venture IX. Granada II was also a partner in a third business known as Joint Venture XI.[1]

Prior to filing their tax returns for 1986, plaintiffs received Schedule K–1's from each of the partnerships [2] pertaining to each of the partnerships' 1986 tax year. The K–1 from ICS indicated that plaintiffs' profit for 1986 was $1,320.00. Granada I's K–1 indicated a profit of $493.00 for plaintiffs, and Granada II's K–1 showed a profit of $14,200.00 for plaintiffs. Plaintiffs timely filed their 1986 income tax return and reflected these amounts as their share of income from each of the partnerships.

In 1988, plaintiffs received a letter from Granada Management, the general partner and tax matters partner for all three partnerships, advising plaintiffs that the IRS had begun an administrative proceeding regarding certain joint ventures in which the partnerships had invested. Plaintiffs took no action in response to this letter.

The IRS issued notices of Final Partnership Administrative Adjustments (FPAA's), with respect to each of the joint ventures, to the tax matters partner of ICS, Granada I and Granada II. In June 1990, plaintiffs received a second letter dated 30 May 1990 from Granada Management explaining that the IRS was proposing to increase the taxable incomes of each partnership for the 1986 tax year and reduce the incomes for the 1987, 1988 and 1989 tax years. The letter contin-

---

1. Joint Venture IX–86, Joint Venture IX and Joint Venture XI may hereinafter be referred to collectively as the Joint Ventures.

2. ICS, Granada I and Granada II may hereinafter be referred to collectively as the partnerships.

ued to inform plaintiffs that, as the tax matters partner, Granada Management was filing a petition opposing the adjustments in the United States Tax Court and would "vigorously defend" the returns filed by the partnerships for the years in question. Plaintiffs took no action in response to this letter.[3]

Granada Management's petition to the Tax Court was unsuccessful and the IRS audit of the joint ventures resulted in adjustments to the joint ventures' tax returns. These adjustments, in turn, resulted in a sizeable increase in the partnerships' taxable income as the partnerships were pass-through partners of the joint ventures. The partnerships, of which plaintiffs were limited partners, were not audited.

The tax matters partner of the partnerships and the joint ventures, Granada Management, entered into a settlement agreement with the IRS on 15 November 1991. This agreement was binding on all partners. Section 6224(c)(3) of the Internal Revenue Code allows small investors, such as plaintiffs, to send notice to the IRS if they do not want to be bound by settlement agreements entered into by the tax matters partner. After stating that any partner who is not a notice partner (a partner who holds one percent or more in a company with over 100 shareholders) or a member of a notice group is bound by a settlement agreement that is "entered into by the tax matters partner, and in which the tax matters partner expressly states that such agreement shall bind other partners." 26 U.S.C. § 6224(c)(3)(A). The statute continues:

> (B) Exception.—Subparagraph (A) "shall not apply to any partner who (within the time prescribed by the Secretary) files a statement with the Secretary providing that the tax matters partner shall not have authority to enter into a settlement agreement on behalf of such partner."

Plaintiffs never filed notice that they would not be bound by any agreements of the tax matters partner. As well, the partnership

agreement Dr. Clark signed authorized the tax matters partner to conduct legal matters that would be binding on all partners.

Plaintiffs were directly notified by the IRS of the settlement agreements and of the agreements' effects on their 1986 income tax returns. The record does not indicate that plaintiffs took any action at that time. Plaintiffs did, however, file this suit requesting a temporary restraining order, a preliminary injunction and declaratory judgment on 29 March 1993. On 24 May 1993, the motion for a temporary restraining order was withdrawn by stipulation and order, and the motion for a preliminary injunction was stayed with the understanding that plaintiffs could reinstate it if necessary. That motion was reinstated on 8 June 1994.

## II. DISCUSSION

■■■ This case is factually similar to one recently decided by this court. *Jordan v. United States,* 863 F.Supp. 270 (E.D.N.C. 1994). In fact, both cases involve the 1986 tax returns of the joint ventures explained above. Both are claims by partners in pass-through partnerships that they were not afforded notice prior to the assessment of additional taxes based on the returns of the partnerships. As was the case in *Jordan,* the matter at bar raises serious issues as to plaintiffs' standing to bring this action. As this court noted in its order in *Jordan,* issues of standing may be raised *sua sponte* by the court and can be summarized in three basic requirements: (1) an allegation by plaintiff that he or she has suffered or will imminently suffer an injury; (2) an allegation that this injury is traceable to defendant's conduct; and (3) an allegation that a favorable court decision is likely to redress the injury. Erwin Chemerinsky, *Federal Jurisdiction* 51 (1989) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)).

---

**3.** North American Agrisystems, Inc., a partner other than the tax matters partner of Joint Venture IX–86, filed a petition with the Tax Court disputing issues raised in the FPAA. American Agribusiness Corporation, a partner other than the tax matters partner of Joint Venture IX filed

a petition with the Tax Court disputing issues raised in the FPAA. Agri–Food Source Corporation, a partner other than the tax matters partner of Joint Venture XI, filed a petition with the Tax Court disputing issues raised in the FPAA.

In this matter, as in *Jordan*, it is undisputed that Dr. Clark signed a limited partnership agreement for ICS, Granada I and Granada II in which he agreed to be bound by the actions of the tax matters partner, unless he notified the IRS otherwise. He never gave such notice. He also admitted that Granada Management informed him of the audit procedures conducted by the IRS pertaining to the joint ventures in 1988, yet he took no action. Plaintiffs were notified in 1990 that the audit was complete and that they could file petitions challenging the results. Plaintiffs admit that they were aware of this option, and again they took no action. The tax matters partner settled the litigation in 1991 and notified plaintiffs of this. Plaintiffs again admit to knowledge of this and yet, again, took no action to object at that time. Plaintiffs were indifferent to the opportunities they had to object to these matters and failed to take any action to protect their interests or voice their objections. These facts are uncontested; and in light of that, the court finds that as a matter of law, plaintiffs have not alleged sufficient injury traceable to defendants' conduct.

As this court stated in its order in *Jordan:*
Plaintiffs' grievances rest on hypothetical failings in the notice provisions—hypothetical because plaintiffs in fact *did* receive notice of the IRS actions. Whether the statutes might have been inadequate *if,* for example, the pass-through partner had not provided notice, or *if* plaintiffs had endeavored to pull together a five-percent group but found it impossible to do so and for that reason did not receive notice, are questions not before the court. There is no real and actual controversy, but only challenges to a statutory scheme that plaintiffs do not like. Even assuming that TEFRA might fail to satisfy due process requirements in some situations, it did not fail *plaintiffs,* who received notice and therefore are hardly in a position to advance the rights of other small partners who, at some undetermined time, may not receive proper notice. On that note, the court observes that the treatment of small partners in large partnerships is a controversial issue that likely will be fully litigated in the appropriate courts. These plain-

tiffs may not challenge the adequacy or efficacy of statutory provisions that they neglected to use.

*Jordan* also addressed the issue of the applicability of the Anti–Injunction Act and the Declaratory Judgment Act to a plaintiff's challenge of the notice provisions of TEFRA. The court adopts the reasoning set out in its order in *Jordan* and concludes that the application of the Anti–Injunction Act and the Declaratory Judgment Act would serve as separate grounds for the dismissal of this action due to lack of jurisdiction.

## III. CONCLUSION

In sum, the court concludes that plaintiffs lack standing to bring this action because their alleged injury—the lack of notice and not the additional tax—is hypothetical in nature. For that reason, as well as the application of the Anti–Injunction and Declaratory Judgment Acts, plaintiffs' renewed motion for a preliminary injunction and motion for summary judgment are DENIED. Defendants' motion for summary judgment is granted and this action is DISMISSED.