RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0038p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AGILITY NETWORK SERVICES, INC., an Illinois
Corporation; CHANDLER DENNY; CINNAMON DENNY,

*Plaintiffs-Appellants*,

    *v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

No. 15-2599

---

Appeal from the United States District Court for
the Western District of Michigan at Grand Rapids.
No. 1:14-cv-01310—Robert J. Jonker, Chief District Judge.

Argued: January 31, 2017

Decided and Filed: February 17, 2017

Before: GIBBONS, ROGERS, and McKEAGUE, Circuit Judges.

---

### COUNSEL

**ARGUED:** Matthew S. DePerno, DEPERNO LAW OFFICE, PLLC, Kalamazoo, Michigan, for Appellants. Gretchen M. Wolfinger, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Matthew S. DePerno, DEPERNO LAW OFFICE, PLLC, Kalamazoo, Michigan, for Appellants. Gretchen M. Wolfinger, Bruce R. Ellisen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

### OPINION

---

    ROGERS, Circuit Judge. After receiving a notice of federal tax lien and a notice of intent to levy, taxpayers Agility Network Services, Inc., Cinnamon Denny, and Chandler Denny requested that the IRS hold a Collection Due Process hearing. The IRS took five months to

process the request, and when the Office of Appeals finally held a hearing, the presiding agent refused to discuss multiple issues with the taxpayers. They were still dissatisfied after a second hearing before a different agent and sued the Government for the IRS agents' alleged misbehavior under 26 U.S.C. § 7433, which provides a damages remedy against the United States for certain actions of IRS officers or employees "in connection with any collection of Federal tax." The taxpayers also requested a temporary restraining order against further tax-collection efforts. The district court properly dismissed all claims because the activity challenged in this case did not fall within the scope of § 7433, and because the Tax Anti-Injunction Act precludes the court from issuing a restraining order.

Before the federal government levies a tax against someone or files a lien on a taxpayer's property, the IRS must notify the taxpayer that he has a right to a Collection Due Process (CDP) hearing. 26 U.S.C. §§ 6320(a)(3)(B), 6330(a)(1). If the taxpayer requests one, an impartial officer from the IRS Office of Appeals will conduct the hearing. *Id.* §§ 6320(b), 6330(b). While CDP proceedings are pending, the IRS must suspend its collection efforts. *Id.* § 6330(e)(1). The taxpayer "may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including . . . challenges to the appropriateness of collection actions" and "offers of collection alternatives." *Id.* § 6330(c)(2)(A). The taxpayer may also challenge the underlying tax liability if he "did not receive any statutory notice of deficiency . . . or did not otherwise have an opportunity to dispute" the liability. *Id.* § 6330(c)(2)(B). When making a determination based on the hearing, the presiding officer must consider the issues raised by the taxpayer and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *Id.* § 6330(c)(3)(B), (C). If after the hearing the Office of Appeals decides to uphold the proposed levy or sustain the notice of federal tax lien, it will issue a notice of determination to that effect. Treas. Reg. § 301.6330–1(f)(1) (as amended in 2016).

The plaintiffs in this case, Cinnamon Denny, Chandler Denny, and their company, Agility Network Services, Inc., have alleged that the IRS mistreated them during the CDP hearing process. Cinnamon Denny owns Agility, and her husband, Chandler Denny, is an employee at Agility (collectively, the taxpayers). On April 17, 2012, the IRS filed a notice of

federal tax lien against Agility for overdue employment taxes.  On May 21, 2012, the IRS filed a notice of intent to levy based on the same overdue taxes.  On May 23, Agility requested a CDP hearing in connection with the proposed lien and levy.  Despite the May request, the IRS did not hold the hearing until December 20.  According to the taxpayers, Revenue Officer McKinzie intentionally caused the delay by refusing to forward the hearing request to the Office of Appeals in an attempt to pursue a penalty against the Dennys individually.  The IRS scheduled the hearing only after the taxpayers filed an application for taxpayer assistance with the Taxpayer Advocate.

IRS Appeals Agent Jaclyn Allen presided over the December 20 hearing.  The taxpayers "outlined multiple issues they wanted to discuss at the hearing, including a request for penalty abatement, collection tactics used as leverage and in an underhanded manner that violated due process, and collection alternatives," but Allen limited the discussions.  In particular: Allen refused to investigate the taxpayers' assertion that they tried to make payments but that the IRS refused to accept them; Allen misstated the tax code and Internal Revenue Manual while offering excuses for Officer McKinzie's failure to process the taxpayers' CDP request; Allen refused to discuss the taxpayers' requested installment plan, reasoning that they did not make enough money to justify one; and Allen denied the taxpayers' request to abate penalties.  Furthermore, Allen stated at the hearing "that she knew . . . McKinzie's actions were made with the genuine intent to help the taxpayers."  The taxpayers contend that this statement proves Allen had an impermissible ex parte communication with McKinzie.  The hearing ended with the taxpayers having discussed only one issue of the many they had planned to raise.

In May 2013, the taxpayers received notice that Allen had scheduled another meeting. After Allen denied the taxpayers' request to record the meeting, their attorney called IRS Appeals Manager Diane Villa.  Villa then "determined that Agent Allen was biased and reassigned the case to IRS Appeals Agent Leonard Hanline," who held a second hearing on July 15, 2013.  Hanline told the taxpayers that they were now dealing with a "well-trained" agent and "that he was just then starting the due process for" them.  At the hearing, the taxpayers requested that the IRS withdraw the lien and allow them to set up an installment plan.  But Hanline refused the request.  He reasoned—contradicting Allen's earlier rationale—that the taxpayers made too

much money to warrant an installment plan.  Hanline also refused to abate penalties.  Furthermore, he "found nothing wrong with the actions taken by . . . McKinzie or Agent Allen."  Instead of working out an alternative collection plan with the IRS, the taxpayers "began a self-imposed $5,000.00 per month payment plan," which they are still following.

Dissatisfied with their treatment during the CDP hearings, the taxpayers sued the United States, seeking damages for violations of 26 U.S.C. § 7433 and requesting "a Temporary Restraining Order (TRO) preventing any further collection action."  The district court granted the Government's motion to dismiss all claims.  *See Agility Network Servs., Inc. v. United States*, No. 1:14-CV-1310, 2015 WL 9591356 (W.D. Mich. Nov. 23, 2015).  The court first reasoned that the waiver of the federal government's sovereign immunity in § 7433 does not encompass the taxpayers' suit, because the provision, narrowly construed, applies only "to conduct specifically related to the actual collection of taxes," which does not include CDP hearings.  *See id.* at *3.  The court then held that the taxpayers' request for a TRO was barred by the Tax Anti-Injunction Act, 26 U.S.C. § 7431(a), as a request to restrain the government's tax-collection efforts.  *See id.* at *4.  The taxpayers now appeal.

The United States has not consented to being sued in this case, and the district court therefore lacked jurisdiction to hear the taxpayers' § 7433 claim.  A person may sue the federal government for damages under 26 U.S.C. § 7433 "[i]f, in connection with any collection of Federal tax with respect to [the] taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of" the tax code or any regulation promulgated thereunder.  The present suit falls outside this waiver of sovereign immunity because the challenged conduct did not occur in connection with tax collection.

As a preliminary matter, because the taxpayers have challenged IRS conduct that occurred solely during or in connection with CDP hearings, the question of whether IRS conduct was "in connection with any collection of Federal tax" is limited to the conduct at the CDP hearings.  The only IRS action to occur outside of the CDP hearings that is described in the taxpayers' complaint is Revenue Officer McKinzie's intentional delay in forwarding the hearing request to the Office of Appeals.  But, in describing their § 7433 claim in the complaint, the

taxpayers focus almost exclusively on Allen's and Hanline's conduct during the two CDP hearings. The complaint mentions McKinzie only in a vague allegation that McKinzie and the other agents "demonstrated bias" and in allegations that Allen and Hanline refused to investigate or "give any consideration" to McKinzie's misconduct. The taxpayers' administrative claim similarly omits McKinzie's delay while defining the § 7433 claim. Such brief mentions of McKinzie's conduct in the complaint hardly put the Government on notice that the taxpayers have sued for damages based on McKinzie's refusal to forward the hearing request. Therefore, we examine only whether the taxpayers have a cognizable claim for damages based on Allen's and Hanline's conduct during the CDP hearings.

The relevant question, then, is whether an IRS agent acts "in connection with any collection of Federal tax" when she conducts a CDP hearing. Under the most reasonable interpretation of the phrase, the answer is no. In common parlance, an IRS agent acting in connection with tax collection would be taking an affirmative step to recover money owed to the government. In contrast, a CDP hearing is a right bestowed upon a taxpayer, at the taxpayer's request, to provide protection from abusive or unduly burdensome tax collection. The hearing does not help the IRS collect on a tax debt, but in fact impedes collection, at least temporarily, to the taxpayer's benefit. Several characteristics of CDP hearings reflect this protective role: the IRS must halt its levy efforts while the proceedings are pending, 26 U.S.C. § 6330(e)(1); the presiding appeals officer must verify "that the requirements of any applicable law or administrative procedure have been met," *id.* § 6330(c)(1); and the appeals officer is instructed to consider whether any proposed collection action balances the need for efficient tax collection with "the legitimate concern of the person that any collection action be no more intrusive than necessary," *id.* § 6330(c)(3)(C). Furthermore, if a taxpayer has not already had the opportunity to challenge his underlying tax liability, he may do so at the hearing. *Id.* § 6330(c)(2)(B). As these provisions suggest, the IRS does not hold CDP hearings to further its collection efforts, but rather to provide a forum for taxpayers to challenge potentially erroneous or unduly burdensome tax collection activities before they are allowed to proceed.

A second, broader interpretation of "in connection with any collection of Federal tax" is plausible but ultimately less reasonable. Under this reading, any IRS agency action involving a

person who owes a tax debt is "in connection with tax collection." Under this interpretation, an IRS agent acts in connection with tax collection during a CDP hearing because, at that point, the IRS has already initiated the levy or lien process against the taxpayer. However, two principles of statutory construction overcome this interpretation. First, courts must avoid interpretations that render statutory language superfluous. *Ford Motor Co. v. United States*, 768 F.3d 580, 587 (6th Cir. 2014). Section 7433, if read in this way, would encompass almost everything IRS agents do. The agency exists to collect revenue, after all. Thus, under this interpretation, § 7433's limiting language imposes no limit, thereby rendering the language surplusage. Second, waivers of the immunity of the United States are construed narrowly, "with any reasonable doubts resolved in the government's favor." *Blackmon v. United States*, 807 F.2d 70, 74 (6th Cir. 1986). As between two reasonable interpretations of ambiguous statutory language, this principle favors the narrower waiver. Therefore, because § 7433 is a waiver of sovereign immunity, reading the phrase broadly to encompass nearly everything IRS employees do is disfavored. Thus, because a broad interpretation of § 7433 violates these principles of statutory interpretation, the narrow reading described first above—under which CDP hearings are not held "in connection with any collection of Federal tax"—is the proper reading of the statute.

The definition of "collection action" in Treas. Reg. § 301.7430–3 (1994) does not change this result, because it does not control § 7433. The regulation corresponds to 26 U.S.C. § 7430, which allows a prevailing party in an "administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax" to collect costs. The regulation defines "administrative proceeding" to exclude "[p]roceedings in connection with collection actions (as defined in paragraph (b) of this section)." Treas. Reg. § 301.7430–3(a)(4). The regulation goes on to define "collection action":

> A collection action generally includes any action taken by the Internal Revenue Service to collect a tax (or any interest, additional amount, addition to tax, or penalty, together with any costs in addition to the tax) or any action taken by a taxpayer in response to the Internal Revenue Service's act or failure to act in connection with the collection of a tax (including any interest, additional amount, addition to tax, or penalty, together with any costs in addition to the tax). For example, a collection action for purposes of section 7430 and this section includes any action taken by the Internal Revenue Service under chapter 64 of subtitle F to collect a tax. Collection actions also include those actions taken by a taxpayer to

remedy the Internal Revenue Service's failure to release a lien under section 6325 and to remedy any unauthorized collection action as defined by section 7433, except those collection actions described by section 7433(e).

*Id.* § 301.7430–3(b) (as amended before February 2016).[1]

Regardless of whether a CDP hearing is a "collection action" within the meaning of Treas. Reg. § 301.7430–3, the regulation has no bearing on whether CDP hearings occur "in connection with any collection of Federal tax" under 26 U.S.C. § 7433. Twice the regulation indicates that its definitions do not apply outside of 26 U.S.C. § 7430. First, the regulation defines "administrative proceeding" "[f]or purposes of section 7430." *Id.* § 301.7430–3(a). Then, when describing that agency action taken under Chapter 64 of Subtitle F—which includes §§ 6320 and 6330, governing CDP hearings—is collection action, the regulation qualifies: "[A] collection action *for purposes of section 7430 and this section* includes any action taken by the Internal Revenue Service under chapter 64 of subtitle F to collect a tax." *Id.* § 301.7430–3(b) (emphasis added). Another contextual clue further indicates that the regulation's definition does not apply to the phrase "in connection with any collection of Federal tax" in § 7433. The regulation states that a lawsuit brought under § 7433 is a "collection action." *Id.* But, because § 7433 expressly covers only IRS employees' conduct, a lawsuit brought by taxpayers cannot be the type of act in connection with tax collection contemplated by the provision. It is therefore impossible to substitute conduct "in connection with any collection of Federal tax" under § 7433 with the regulation's definition of "collection action" in § 301.7430–3(b).

The Taxpayer Advocate's 2013 Report also makes no difference. *See* Taxpayer Advocate Serv., National Taxpayer Advocate 2013 Annual Report to Congress, Volume One (2013). The report points out that the Office of Appeals uses the Collection Internal Revenue Manual in CDP proceedings to: "[v]erify whether administrative procedures were followed in issuing the [notice of federal tax lien or notice of levy];" "[r]eview Collection case actions and

---

[1]A subsequent amendment added: "Collection actions also include collection due process hearings under sections 6320 and 6330 (unless the underlying tax liability is properly at issue) . . . ." Treas. Reg. § 301.7430–3(b) (as amended in 81 Fed. Reg. 10479, 10485 (Mar. 1, 2016)). "[A]dministrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Therefore, the definition in effect when the taxpayers filed their lawsuit controls. The subsequent amendment also does not change the fact that the regulation's definition does not apply to § 7433.

decisions; and" "[e]valuate alternatives to collection action." *Id.* at 161–62. This reveals that the Appeals Office uses the collection guidelines to evaluate the Collection Office's activities, but the Appeals Office does not somehow become the collection arm of the IRS by using the Collection manual for these purposes.

Finally, the taxpayers are not entitled to an injunction against further collection efforts. The Tax Anti-Injunction Act, 26 U.S.C. § 7421(a), prevents suits brought "for the purpose of restraining the assessment or collection of any tax." The taxpayers' complaint asks for a TRO "preventing any further collection action and [requiring the] return of the auctioned property." This is clearly a request for an injunction inhibiting the government from collecting on the taxpayers' tax debt, which § 7421(a) prohibits. Furthermore, the limited exception to § 7421(a)'s ban recognized in *Enochs v. Williams Packing & Navigation Co., Inc.*, 370 U.S. 1 (1962), does not apply. If "under no circumstances could the Government ultimately prevail," and "equity jurisdiction otherwise exists," a court may issue an injunction that would otherwise be barred by § 7421(a). *Id.* at 7. Because the taxpayers' § 7433 claim was properly dismissed, it is impossible to say that the Government cannot prevail. Thus, the district court also properly dismissed the taxpayers' request for a TRO.

The judgment of the district court is affirmed.