# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 21, 2017      Decided December 19, 2017

No. 16-5242

REGINALD L. IVY,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01976)

———

*Travis Crum*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs was *Brian D. Netter*.

*Reginald L. Ivy*, pro se, filed the briefs for appellant.

*Clint A. Carpenter*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Joan I. Oppenheimer*, Attorney.

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: A provision of the Taxpayer Bill of Rights, 26 U.S.C. § 7433(a), provides for a civil action against the United States if a taxpayer suffers damages as a result of reckless, negligent or intentional disregard of the Code or regulations "in connection with any collection of Federal tax" with respect to that taxpayer. Appellant Reginald L. Ivy invokes § 7433(a) to recover damages he claims to have suffered as a result of a mix-up relating to the refund due him on his 2011 income tax. Because the statute waives the government's sovereign immunity only for damages suffered in connection with *collection of federal taxes*, and Ivy's injury (if any) related to collection of a student loan debt, § 7433(a) provides no jurisdictional path for Ivy's suit; we affirm the district court's dismissal of his case.

\* \* \*

The underlying tangles begin with Ivy's defaulting on a student loan, prompting the Missouri Department of Higher Education to notify him in August 2009 that any federal tax refunds to which he might become entitled would be used first to pay off his past-due debt. Ivy for a time pursued a course that mooted this threat; for the 2010-12 tax years, he didn't file timely tax returns.

But while Ivy remained off the radar, someone else— evidently a practitioner of identity theft—filed a 2011 tax return in Ivy's name, claiming a tax refund of $1,822. The IRS certified the matter to the Fiscal Service (a separate bureau within the Department of the Treasury that was formerly known as the Financial Management Service) for disbursement of the claimed refund. The Fiscal Service, aware of Ivy's "past-due legally enforceable debt," 26 U.S.C. § 6402(d), sent the $1,822

to the Department of Education (which, as reinsurer, had taken over the loan after Ivy defaulted). The Department of Education then reduced Ivy's outstanding loan balance by the amount of the claimed refund. Up to this point, the errors worked in favor of Ivy to the tune of $1,822.

Nearly a year later, in August 2013, Ivy tended to his student loan debt. He consolidated his loan through one of the federal government's direct loan programs and, as a result, no longer owed any past-due federal debts. In the next month, he belatedly filed his 2011 tax return, claiming a $634 refund.

The IRS accordingly set out to unscramble the actions taken in response to the imposter's filing, specifically the $1,822 windfall that had flowed to Ivy. It instructed the Fiscal Service to reduce the amount that had previously been applied to Ivy's student loan balance by $1,188—the difference between the refund claimed by the imposter ($1,822) and the refund claimed by Ivy ($634).

Ivy responded by suing the IRS, seeking damages (including the $634) and expenses. He claimed that the federal government had no right to withhold the $634 because, at the time he belatedly filed his 2011 return and sought a refund, he was no longer subject to a past-due debt that could trigger the offset provisions of § 6402(d).

To the extent that Ivy's complaint can be read as seeking a refund of $634, all parties agree that any such claim is now moot. During the pendency of this appeal, the IRS directed the Fiscal Service to pay Ivy $717.71 ($634 plus $83.71 in interest). Ivy accepted the payment.

The district court concluded that it lacked jurisdiction over the case. Because the refund per se is out of the case, all that remains is Ivy's claim for compensatory and punitive damages.

As to the former, Ivy points to the burden of having to pay interest for a time on a "bill with a very high interest rate," obligations that Ivy contends he would not have incurred if the $634 refund had been disbursed in timely response to his belated filing of his 2011 return.  On appeal, Ivy has expressly embraced the helpful and cogent arguments of the court-appointed amicus.

* * *

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  Ivy argues that 26 U.S.C. § 7433, commonly referred to as the Taxpayer Bill of Rights, provides the requisite waiver:

> If, *in connection with any collection of Federal tax with respect to a taxpayer*, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.  Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

26 U.S.C. § 7433(a) (emphasis added).

The IRS offers two reasons why § 7433 is inapplicable: (1) the allegedly improper offset did not involve the collection of any federal tax but rather the collection of a debt to the Department of Education; (2) it was officials in the Fiscal Service not the IRS who performed the acts challenged here.

As the first contention is correct, we need not address the second.

We and other courts have taken seriously the language of § 7433(a) limiting its remedy to misconduct tied to tax collection.  In *Kim v. United States*, 632 F.3d 713 (D.C. Cir. 2011), we held that executing a lien and demanding payment through a notice of assessment constituted tax collection activities.  *Id*. at 716-17.  In a later decision involving the same litigants, we found that a letter sent by the IRS in response to frivolous correspondence "was the antithesis of a collection effort" because it did not involve "an assertive effort to collect allegedly unpaid taxes—much less an abusive one."  *Kim v. United States*, 707 F.3d 335, 337 (D.C. Cir. 2013).  Other circuits have similarly limited § 7433's reach to situations in which the IRS has "tak[en] an affirmative step to recover" taxes owed to the government.  *Agility Network Servs., Inc. v. United States*, 848 F.3d 790, 794 (6th Cir. 2017); see also *Gonsalves v. IRS*, 975 F.2d 13, 16 (1st Cir. 1992).

We observed in the first *Kim* case that § 7433(a) encompasses only "collection-related activities," 632 F.3d at 716, and amicus urges us to view that phrase as including the IRS's activities here.  The IRS collected taxes from Ivy, and it was those tax dollars that were offset by a debt that was no longer past-due; accordingly, argues amicus*,* the activities at issue were "collection-related."  But a reading so weakly tethered to the tax collection process itself would extend § 7433(a)'s remedies to everything the IRS does.  "The agency exists to collect revenue, after all."  *Agility Network Servs.*, 848 F.3d at 795; see also *Gonsalves*, 975 F.2d at 16 (refusing to apply § 7433(a) to an allegedly wrongful refusal to refund taxes).  Moreover, Congress could reasonably have thought that the IRS's actual collection processes posed the greatest risk of dangerous abuse.

Here, the IRS took no affirmative steps to collect taxes. Even if the conduct of the Fiscal Service (as opposed to the IRS) were encompassed by § 7433, the only obligation it sought to collect was a non-tax debt. As the IRS rightly points out, Ivy's taxes had already been collected (through income tax withholding, presumably) at the time that he argues the federal government improperly withheld his refund. Neither the IRS nor the Fiscal Service made any further effort to collect taxes for the 2011 tax year.

We therefore conclude that we lack jurisdiction to hear Ivy's damages claim. For the reasons enumerated by amicus, see Amicus Br. at 26 n.5, we also find the district court properly dismissed Ivy's *Bivens* claim.

We note that 26 U.S.C. § 6402(g), while generally barring review of the Fiscal Service's reduction under other subsections of § 6402 of the amount slated to be refunded to a taxpayer, specifies that it "does not preclude any legal, equitable, or administrative action against the Federal agency or State to which the amount of such reduction was paid." See Joint Appendix 22, Letter from Fiscal Service to Reginald Ivy (Sept. 26, 2012) (notifying Ivy to contact the Department of Education if he disputed the existence of the non-tax debt). That clause of § 6402(g), preserving any otherwise existing rights against an entity that was "paid" the amount of a refund reduction, fits comfortably with our reading of § 7433(a).

* * *

The judgment of the district court is

*Affirmed*.